SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Andrew McCarrell v. Hoffmann-La Roche, Inc. (A-28-15) (076524)

**Argued October 13, 2016 -- Decided January 24, 2017**

**Albin, J., writing for a unanimous Court.**

This appeal raises the question: What are New Jersey's choice-of law rules in determining the applicable statute of limitations in a tort action? Plaintiff Andrew McCarrell timely filed this products-liability action within New Jersey's statute of limitations, but Alabama's limitations period had expired by the time of the filing. The issue is which state's statute of limitations applies under New Jersey's choice-of-law jurisprudence.

At age 24, McCarrell, an Alabama resident, was prescribed a four-month Accutane regimen to treat his acne in 1995. In 1996, ten months after he stopped taking Accutane, McCarrell began experiencing intense stomach pain and diarrhea and was diagnosed as suffering from inflammatory bowel disease; he underwent multiple, serious surgeries to address complications from this condition. McCarrell was prescribed and took Accutane in Alabama and received medical treatment in that state. Accutane is produced by defendants Hoffman-La Roche, Inc., and Roche Laboratories, Inc. (collectively Roche). Roche was incorporated and maintained its corporate offices in New Jersey. Roche designed, manufactured, and labeled Accutane in New Jersey and distributed it from this State.

In July 2003, plaintiff filed a products-liability action in the Law Division, alleging that Roche had failed to provide adequate warnings about the risks and side effects associated with taking Accutane. Roche moved for summary judgment, citing Alabama's two-year statute of limitations. The trial court denied the motion, finding that the governmental-interest test set forth in Gantes v. Kason Corp., 145 N.J. 478, 484 (1996), directed that New Jersey's statute of limitations governs the case. The jury found in favor of McCarrell on the failure-to-warn claim, but the Appellate Division reversed based on evidentiary issues. The Appellate Division approved the trial court's application of New Jersey's statute of limitations to the case, however, and the Court denied Roche's petition for certification. McCarrell v. Hoffman-La Roche, Inc., 199 N.J. 518 (2009).

After a new trial, a jury found Roche liable for failure to warn, awarding McCarrell $25,159,530. Roche challenged the verdict on the ground that the governmental-interest test had been supplanted by the most-significant-relationship test of sections 146, 145, and 6 of the Second Restatement of Conflicts of Law and argued that, under this test, Alabama's statute of limitations applied. The trial court denied the challenge as untimely.

An appellate panel accepted Roche's argument that P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008)—which adopted sections 146, 145, and 6 of the Second Restatement for resolving conflicts of substantive tort law—altered the landscape of choice-of-law jurisprudence and compelled the application of Alabama's statute of limitations in this case. The panel expressly declined to apply section 142 of the Second Restatement. It vacated the jury's verdict and award, dismissed McCarrell's complaint as untimely, and did not reach the remaining issues raised by Roche on appeal. The Court granted McCarrell's petition for certification. 223 N.J. 555 (2015).

**HELD**: Section 142 of the Second Restatement is now the operative choice-of-law rule in New Jersey for resolving statute-of-limitations conflicts because it will channel judicial discretion and lead to more predictable and uniform results that are consistent with the just expectations of the parties. Based on a choice-of-law analysis under section 142, New Jersey's limitations period governs, and therefore McCarrell's action was timely filed. The Court therefore reinstates McCarrell's verdict and damages award and remands to the Appellate Division for consideration of the unaddressed issues remaining on appeal.

1. The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict. When a complaint is timely filed within one state's statute of limitations but is filed outside another's, a true conflict is present. In this case, New Jersey's and Alabama's statutes of limitations are in conflict. (pp. 16-18)

2. Under the common law, the forum state—the state in which a lawsuit was filed—applied its own statute of limitations when a choice-of-law issue arose. In Heavner v. Uniroyal, Inc., the Court rejected that inflexible rule. 63 N.J. 130, 140-41 (1973). Instead, the Court adopted a new rule that weighed the contacts that each state had to the matter in determining the applicable statute of limitations. (pp. 19-21)

3. In Gantes, supra, the Court adopted "a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." 145 N.J. at 484. The Gantes Court evaluated New Jersey's governmental interests, recognized the State's "strong interest in encouraging the manufacture and distribution of safe products for the public and, conversely, in deterring the manufacture and distribution of unsafe products within the state," and observed that meritorious products-liability actions that are timely filed and hold manufacturers accountable for dangerous products further that interest. Id. at 490. The Gantes Court thus applied New Jersey's limitations period and permitted the lawsuit, which would have been barred under Georgia law, to proceed. Id. at 487, 499. (pp. 21-24)

4. The Court had adopted the governmental-interest test to resolve choice-of-law issues concerning substantive tort law before Heavner and Gantes adopted that test for statutes of limitations. That test remained the analytical tool for deciding choice-of-law issues related to substantive tort law and statutes of limitations until, in Camp Jaycee, supra, this Court formally adopted the Second Restatement's most significant-relationship test in sections 146, 145, and 6 for deciding the choice of substantive law in tort cases involving more than one state. 197 N.J. at 142-43. In Camp Jaycee, choosing between this State's and another state's statute of limitations was not an issue. The Court now establishes a bright-line rule: a conflict of law is present whenever the selection of one statute of limitations over another is outcome dispositive. (pp. 24-28)

5. Camp Jaycee's adoption of sections 146, 145, and 6 of the Second Restatement to resolve conflicts of substantive law in tort actions was not a signal that the Court would apply the same choice-of-law test for statutes of limitations. Indeed, the drafters of the Second Restatement did not intend that sections 146 and 145 would be used for statute-of-limitations choice-of-law determinations, but rather crafted section 142 to address statutes of limitations as an independent issue. Incorporating section 142 into New Jersey's choice-of-law jurisprudence completes the conversion from the governmental-interest standard to the Second Restatement begun in Camp Jaycee. (pp. 28-29)

6. Under section 142, the statute of limitations of the forum state generally applies whenever that state has a substantial interest in the maintenance of the claim. In that circumstance, the inquiry ends unless exceptional circumstances would render that result unreasonable. Only when the forum state has "no substantial interest" in the maintenance of the claim does a court consider whether "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence" through consideration of the factors in section 6. Restatement (Second), supra, § 142(2)(a)-(b). (pp. 29-31)

7. The Court believes that section 142 benefits from an ease of application; places both New Jersey's and out-of-state's citizens on an equal playing field, thus promoting principles of comity; advances predictability and uniformity in decision-making; and allows for greater certainty in the expectations of the parties. The Court finds section 142's presumption favoring a forum state with a substantial interest in the matter consistent with the holding in Gantes and beneficial to New Jersey companies by offering protection against another state's longer limitations period. Section 142 is a less malleable standard than the governmental-interest test and will channel judicial discretion to ensure a higher degree of uniformity and predictability in resolving choice-of-law issues. (pp. 31-36)

8. Applying section 142 to the facts of this case, New Jersey's statute of limitations governs because the Court cannot conclude that "maintenance of the claim would serve no substantial interest" of New Jersey and because there are no "exceptional circumstances" that call for the application of Alabama's limitations period. Restatement (Second), supra, § 142(2)(a). (pp. 36-40)

The judgment of the Appellate Division is **REVERSED** and the jury's verdict and damages award are **REINSTATED**. The matter is **REMANDED** to the Appellate Division for consideration of the unaddressed issues.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON did not participate.**

2

ANDREW McCARRELL,

    Plaintiff-Appellant,

       v.

HOFFMANN-LA ROCHE, INC., and
ROCHE LABORATORIES, INC.,

    Defendants-Respondents.


       Argued October 13, 2016 – Decided January 24, 2017

       On certification to the Superior Court,
       Appellate Division.

       David R. Buchanan argued the cause for
       appellant (Seeger Weiss, attorneys; Mr.
       Buchanan, Michael D. Hook and Mary Jane
       Bass, members of the Florida bar, on the
       briefs).

       Paul W. Schmidt, a member of the District of
       Columbia bar, argued the cause for
       respondents (Gibbons and Dughi Hewit &
       Domalewski, attorneys; Mr. Schmidt, Michelle
       M. Bufano, Natalie H. Mantell, Russell L.
       Hewit, and Michael X. Imbroscio, a member of
       the District of Columbia bar, of counsel and
       on the briefs).

       Christopher M. Placitella argued the cause
       for amicus curiae New Jersey Association for
       Justice (Cohen, Placitella & Roth,
       attorneys; Mr. Placitella and Jared M.
       Placitella, of counsel and on the brief).

       David R. Kott argued the cause for amicus
       curiae The New Jersey Civil Justice
       Institute (Mr. Kott and Edward J. Fanning,
       Jr., of counsel; Mr. Kott, Mr. Fanning, and

Gary R. Tulp, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Over the years, our choice-of-law jurisprudence has striven to structure rules that will lead to predictable and uniform results that are fair and just and that will meet the reasonable expectations of the parties. In this appeal, we attempt to advance that goal.

Accutane is a prescription medication for the treatment of severe cases of acne. In this products-liability action filed in New Jersey, plaintiff Andrew McCarrell, an Alabama resident, claims that he developed a virulent form of inflammatory bowel disease as a result of taking Accutane. He also claims that had Accutane's warning labels adequately informed him of the risks and dangers associated with Accutane, he would not have taken the medication.

Plaintiff was prescribed and took Accutane in Alabama, and he developed and was treated for inflammatory bowel disease in that state. Defendants Hoffmann-La Roche, Inc., and Roche Laboratories, Inc., both New Jersey corporations, (collectively Roche), designed, manufactured, and labeled Accutane in New Jersey and distributed the medication from this State.

Plaintiff timely filed the products-liability action under New Jersey's statute of limitations, but Alabama's limitations period had expired by the time of the filing. The issue is

2

which state's statute of limitations applies under New Jersey's choice-of-law jurisprudence.

The trial court concluded that under the governmental-interest test articulated in Gantes v. Kason Corp., 145 N.J. 478, 484 (1996), New Jersey's statute of limitations applied. In the most recent trial of this case, a jury found Roche liable on plaintiff's failure-to-warn claim and awarded damages.

The Appellate Division reversed and dismissed the action, finding that Alabama's statute of limitations governed under the substantial-relationship test in sections 146, 145, and 6 of the Restatement (Second) of Conflicts of Law (1971) (Am. Law Inst., amended 1988) (Restatement (Second)). The American Law Institute crafted that test to determine whether the forum state's or another state's substantive law applies in a tort action. That test begins with a presumption favoring the law of the state where the injury occurred.

The American Law Institute, however, fashioned a different test to resolve choice-of-law determinations involving statutes of limitations. Under section 142 of the Second Restatement, the statute of limitations of the forum state -- here, New Jersey -- applies if that state has a substantial interest in the maintenance of the claim and there are no "exceptional circumstances" that "make such a result unreasonable."

We hold that section 142 of the Second Restatement is now

3

the operative choice-of-law rule for resolving statute-of-limitations conflicts because it will channel judicial discretion and lead to more predictable and uniform results that are consistent with the just expectations of the parties. The adoption of section 142 is also a natural progression in our conversion from the governmental-interest test to the Second Restatement begun in P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008), which adopted sections 146, 145, and 6 for resolving conflicts of substantive tort law. The Appellate Division mistakenly read Camp Jaycee as suggesting that we would adopt the same choice-of-law rule for purposes of both substantive law and statutes of limitations.

An analysis under section 142 of the Second Restatement leads to the conclusion that New Jersey's statute of limitations was properly applied to this products-liability action. Our jurisprudence has long recognized that this State has a substantial interest in deterring its manufacturers from placing dangerous products in the stream of commerce. Inadequate warning labels can render prescription medications dangerous. No exceptional circumstances are present that would render the application of New Jersey's limitations period unreasonable. Importantly, even were we to apply our previous governmental-interest test, the outcome would be no different.

We therefore reverse and reinstate the jury's verdict and

4

award.  We remand to the Appellate Division for consideration of the unaddressed issues remaining on appeal.

## I.

## A.

In July 2003, plaintiff filed a products-liability action in the Superior Court, Law Division, alleging that defendant Roche -- the New Jersey manufacturer, marketer, and distributor of Accutane -- failed to provide adequate warnings about the risks and side effects associated with taking Accutane. Plaintiff asserts that had he received proper warnings about the potentially devastating side effects of Accutane, he would not have taken the medication, which he claims was the proximate cause of his inflammatory bowel disease.  Plaintiff also alleges that Roche's mislabeling of Accutane violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20.

The sole issue before us is whether the statute of limitations of New Jersey (the forum state) or Alabama (the injury-site state) governs this case.  From the voluminous trial and pre-trial record, we recite the facts relevant to address that issue.

## B.

Plaintiff, a resident of Alabama, had suffered from acne since high school, and antibiotics proved to be an ineffective treatment.  In June 1995, when plaintiff was twenty-four years

5

old, his dermatologist prescribed Accutane.  Plaintiff took daily doses of the medicine for the next four months.  Four weeks into the treatment program, plaintiff experienced dry eyes, achy joints, and chapped lips but complained of no other adverse side effects.  After completing his regimen of Accutane, plaintiff noticed that his skin was clearer.  At a four-month post-Accutane review with his dermatologist in February 1996, plaintiff reported that the prior side effects had subsided and that he had experienced no new health problems.

In August 1996, ten months after he stopped taking Accutane, plaintiff began experiencing intense stomach pain and diarrhea.  Over the next several months, plaintiff's condition worsened, and his primary care physician referred him to a gastroenterologist.  In November 1996, plaintiff was diagnosed as suffering from inflammatory bowel disease.  By the next month, as a result of constant bleeding from the rectum, plaintiff became anemic.  Plaintiff's weight had dropped from 162 pounds, his pre-Accutane weight, to just 114 pounds at this point.

Over the next several years, plaintiff underwent multiple surgeries.  Plaintiff's colon and rectum were removed and replaced with a j-pouch -- an artificially constructed reservoir at the end of the small intestines -- that is intended to allow for ordinary bowel movements.  The j-pouch became inflamed,

6

causing plaintiff to suffer persistent and severe gastrointestinal pain and flu-like symptoms. To permit the j-pouch to heal, a colostomy bag was attached to plaintiff's small intestine through a surgical procedure. Plaintiff subsisted with the colostomy bag for four-and-one-half years until another surgery reconnected the j-pouch to the small intestine. Plaintiff continues to suffer from severe abdominal cramping, multiple bowel movements every day, and episodes of incontinence.

Plaintiff was prescribed and took Accutane in Alabama and was treated for the medical complications related to inflammatory bowel disease in that state.

C.

Defendants Hoffmann-La Roche, Inc., and Roche Laboratories, Inc., were incorporated in New Jersey and maintained their corporate offices here. They designed, manufactured, and labeled Accutane in New Jersey and distributed the product from this State.

In 1982, the United States Food and Drug Administration approved Accutane, known generically as isotretinoin, for the treatment of recalcitrant nodular acne. At the time that plaintiff's physician prescribed, and plaintiff took, Accutane, Roche had provided various warnings about Accutane's possible adverse side effects -- including potential gastrointestinal

7

disorders -- by means of product labeling, a patient brochure, and a Dear Doctor letter.[1]

Plaintiff claims that the Accutane label and other warnings conveyed the impression that the listed adverse reactions to Accutane would arise while the patient was taking the medication and that discontinuing its use would resolve such problems. Plaintiff also contends that the warnings did not suggest that he could develop an irreversible case of inflammatory bowel disease after completion of the Accutane regimen. He asserts that, during the period he took Accutane, Roche knew or should have known that Accutane not only could trigger inflammatory bowel disease after its use, but that it also could cause irreversible damage to his organs, and that Roche failed to provide adequate warnings to him and his physician about those risks.

Roche counters that the warnings sufficiently apprised defendant of the associated risks of taking Accutane and that plaintiff's use of the medication was not the proximate cause of his inflammatory bowel disease.

D.

---

[1] A "Dear Doctor letter" is a letter sent to physicians and other health-care professionals by a drug manufacturer or the Food and Drug Administration advising of substantial new warning information. PLIVA, Inc. v. Mensing, 564 U.S. 604, 615, 131 S. Ct. 2567, 2576, 180 L. Ed. 2d 580, 590 (2011).

Roche moved for summary judgment to dismiss plaintiff's claims on the basis that they were barred by Alabama's two-year statute of limitations governing personal injury claims. See Ala. Code § 6-2-38(l). Roche reasoned that because plaintiff's injury occurred in 1996 and his claim was filed in 2003, the claim was not filed within the appropriate limitations period. In contrast, plaintiff argued that the equitable "discovery rule" incorporated into New Jersey's two-year statute of limitations, N.J.S.A. 2A:14-2, was the applicable law. Under the "discovery rule," the statute of limitations does not begin to run "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973). Alabama's statute of limitations does not have an equitable tolling provision. Cline v. Ashland, Inc., 970 So. 2d 755, 760-61 (Ala.) (See, J., concurring), cert. denied, 551 U.S. 1103, 127 S. Ct. 2916, 168 L. Ed. 2d 244 (2007).

The Honorable Carol Higbee, J.S.C., who presided over the case, denied Roche's motion. Judge Higbee stated that the governmental-interest test, as expounded in Gantes, supra, 145 N.J. at 484, directed that New Jersey's statute of limitations governs the case. She found that Alabama had no discernible interest in barring one of its residents from pursuing a claim

9

against a New Jersey pharmaceutical company in a New Jersey court and that this State had a singularly distinct interest "in deterring the manufacture and distribution of unsafe products within the state," quoting id. at 490.

Judge Higbee determined that plaintiff did not become aware that his use of Accutane could have caused his inflammatory bowel disease until June 2003. Because plaintiff filed his complaint six weeks after that discovery, Judge Higbee concluded that, under New Jersey's equitable tolling rule, the complaint was timely filed.

E.

At the conclusion of a four-week jury trial in 2007, the court instructed the jury on Alabama's substantive law, including its products-liability law.[2] The jury found in favor of plaintiff on the failure-to-warn claim and awarded damages in the amount of $2,619,000. The jury rejected plaintiff's consumer-fraud claim.

The Appellate Division reversed the jury's failure-to-warn verdict based on erroneous evidentiary rulings by the trial court and remanded for a new trial. The Appellate Division, however, approved of the trial court's "sound" reasoning in finding that "the competing policy interests at stake" called

---

[2] Neither party contests in the present appeal that Alabama's products-liability law governs this case.

10

for the application of New Jersey's statute of limitations on the failure-to-warn claim.  The Appellate Division also concluded that the trial court "had ample factual grounds to find that [New Jersey's] two-year limitation period should be equitably tolled to accommodate plaintiff's lawsuit."

We denied Roche's petition for certification.  McCarrell v. Hoffmann-La Roche, Inc., 199 N.J. 518 (2009).

F.

Plaintiff's second trial in 2010 lasted about four weeks. The jury found Roche liable on plaintiff's failure-to-warn claim and awarded plaintiff $25,159,530.  Roche moved for a judgment notwithstanding the verdict, arguing again that the trial court erroneously applied New Jersey's limitations period.  Relying on Camp Jaycee, supra, 197 N.J. 132, and Cornett v. Johnson & Johnson, 414 N.J. Super. 365 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012), Roche maintained that the governmental-interest test had been supplanted by the most-significant-relationship test of sections 146 and 145 of the Second Restatement, which starts with a presumption in favor of the substantive law of the state where the injury occurred. That test, Roche asserted, compelled the application of Alabama's limitations period.

Judge Higbee denied the motion, holding that Roche's change-of-law argument was not timely because Roche did not

11

argue for adoption of those sections of the Second Restatement when it appeared before the Appellate Division, despite the availability of the Camp Jaycee decision.[3]  Judge Higbee, moreover, concluded that the decision to apply the New Jersey limitations period would be no different if she were to engage in an analysis under Second Restatement sections 146, 145, and 6.

G.

In an unpublished opinion, an appellate panel accepted Roche's change-of-law argument -- the argument that Camp Jaycee altered the landscape -- and held that Alabama's two-year statute of limitations governed under sections 146, 145, and 6 of the Second Restatement.  It noted that plaintiff received his inflammatory bowel disease diagnosis on November 26, 1996, but did not file his claims until July 23, 2003.  Because Alabama's statute had no equitable tolling provision, the panel vacated the jury's verdict and award and dismissed plaintiff's complaint as having been filed out of time.

The panel held that under section 146 of the Second Restatement, "the law of the state where the injury occurred" -- here, Alabama -- applies "unless another state has a more

---

[3] Camp Jaycee was decided six days before oral argument in the Appellate Division and three-and-one-half months before the Appellate Division rendered its decision.

12

significant relationship to the issue" based on an analysis of the factors enumerated in Second Restatement sections 145 and 6. After analyzing those factors, the panel concluded that the injury-site presumption had not been overcome. It focused on the fact that Alabama is where plaintiff resided, where he was prescribed and took Accutane, and where he developed and was treated for inflammatory bowel disease. The panel took the view that "New Jersey has little interest in protecting the compensation right of [an out-of-state] resident," quoting Cornett, supra, 414 N.J. Super. at 381.

The panel expressly declined to apply section 142 of the Second Restatement -- a section specifically crafted to resolve the choice-of-law issue that arises when the forum state's and another state's statutes of limitations are in conflict. Under section 142, the limitations period of the forum state applies unless it has "no substantial interest" in maintaining the claim in its courts.

The panel did not reach the remaining issues raised by Roche on appeal.[4]

We granted plaintiff's petition for certification.

---

[4] Roche also claimed that the trial court erred in limiting defendant from calling certain expert witnesses; in allowing the case to be submitted to the jury in the absence of sufficient evidence establishing proximate causation; and in not granting a new trial or, alternatively, a remittitur because of the excessiveness of the damages award.

McCarrell v. Hoffmann-La Roche, Inc., 223 N.J. 555 (2015).  We also granted the motions of the New Jersey Association for Justice and the New Jersey Civil Justice Institute to participate as amici curiae.

II.

A.

Plaintiff argues that the Appellate Division erred by not applying section 142 of the Second Restatement, entitled "Statute of Limitations of Forum."  That section, he notes, is specifically designed to decide choice-of-law questions governing the timeliness of a tort action when two or more interested states have conflicting statutes of limitations.

Plaintiff asserts that had the appellate panel in this case applied section 142 and its presumption favoring the forum state's statute of limitations, it would have upheld the trial court's finding that this State's limitations period applies. Plaintiff further maintains that, even if Restatement sections 146, 145, and 6 govern, along with the presumption favoring the injury-site state, a proper weighing of the factors would indicate that New Jersey, not Alabama, has the "most significant relationship" to this products-liability action.  Under either analysis, plaintiff submits, New Jersey's statute of limitations applies.

14

Amicus New Jersey Association for Justice urges this Court to adopt section 142 of the Second Restatement, reasoning that 142's presumption favoring the forum state's statute of limitations will allow for more uniform and predictable choice-of-law decision-making and advance New Jersey's strong interest in regulating its manufacturers.

B.

Roche argues that the proper choice-of-law analysis for determining the applicable statute of limitations is set forth in sections 146, 145, and 6 of the Second Restatement. Roche submits that viewing New Jersey's and Alabama's respective interests through the lens of those Restatement sections leads to the conclusion that plaintiff did not overcome the presumption favoring use of the injury-site state's statute of limitations. Roche therefore asserts that the Appellate Division correctly dismissed plaintiff's action under Alabama's limitations period.

Roche asserts that plaintiff -- by advancing section 142 as the governing choice-of-law modality -- is attempting to revive the now-defunct common-law rule that the forum state's statute of limitations prevails as a matter of procedure. That approach, Roche insists, was rejected by this Court in Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973).

15

Roche further asserts that, even if this Court were to apply section 142 to the choice-of-law issue in this case, the outcome would be no different; Alabama's statute of limitations would govern because nearly all of the significant events related to this litigation occurred in Alabama.

Amicus New Jersey Civil Justice Institute also asks this Court to reject plaintiff's invitation to adopt section 142 of the Second Restatement. The Civil Justice Institute expresses concern that ratifying section 142's framework will encourage forum shopping by out-of-state residents seeking to sue New Jersey pharmaceutical companies in our courts.

### III.

When a civil action is brought in New Jersey, our courts apply New Jersey's choice-of-law rules in deciding whether this State's or another state's statute of limitations governs the matter. Gantes, supra, 145 N.J. at 484. This appeal raises the question: What are our choice-of-law rules in determining the applicable statute of limitations in a tort action? The trial court used the governmental-interest test expounded in Gantes, and the Appellate Division used the significant-relationship test found in sections 146, 145, and 6 of the Second Restatement -- a test intended to determine which state's substantive law will apply. Now, plaintiff argues that we should use the analytical framework set forth in section 142 of the Second

16

Restatement, which was specifically designed to determine whether the forum state's or another state's statute of limitations will govern.

The analytical framework for deciding how to resolve a choice-of-law issue is a matter of law.  See Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 283 (App. Div. 2007).  Because the trial court and Appellate Division have no better insight than this Court in determining such matters, we are not bound by their legal conclusions and therefore our review is de novo.  See Zaman v. Felton, 219 N.J. 199, 216 (2014).

We begin with a brief discussion of some general choice-of-law principles governing statutes of limitations.

A.

The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict.  Gantes, supra, 145 N.J. at 484.  When application of the forum state's or another state's statute of limitations results in the same outcome, no conflict exists, and the law of the forum state governs.  Rowe v. Hoffmann-La Roche, Inc., 189 N.J. 615, 621 (2007).  In contrast, when a complaint is timely filed within one state's statute of limitations but is filed outside another state's, then a true conflict is present.  See Schmelzle v. ALZA Corp., 561 F. Supp. 2d 1046, 1048 (D. Minn.

17

2008).  In other words, a true conflict of law arises when choosing between one or another state's statute of limitations is outcome determinative.  See ibid.  In that circumstance, a court must decide, under the appropriate choice-of-law rule, which jurisdiction's statute governs.  In this case, New Jersey's and Alabama's statutes of limitations are in conflict.  Plaintiff's lawsuit is only timely if New Jersey's limitations period applies.

The history of our evolving choice-of-law jurisprudence will provide context to the issue before us.

B.

Under the common law, the forum state -- the state in which a lawsuit was filed -- applied its own statute of limitations when a choice-of-law issue arose.  See, e.g., Smith v. Smith, 90 N.J.L. 282, 286-87 (E. & A. 1917) ("A foreign judgment is subject to the statute of limitations of the lex fori[,] . . . the law of the place where the action is instituted." (citation omitted)).  That approach was based on the common-law notion that statutes of limitations are "procedural in nature and therefore subject to the law of the forum."  Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 180 (1962); accord Restatement (Second) of Conflicts of Law § 142 (Am. Law Inst.

18

1971).[5]

In Heavner v. Uniroyal, Inc., we rejected the inflexible common-law rule of always applying our own statute of limitations in choice-of-law matters merely because limitations periods were denominated as procedural. 63 N.J. 130, 140-41 (1973). We held that we were not bound to follow a rule based solely on historical tradition when no sound rationale remained for keeping the rule. See id. at 135-40. Instead, we adopted a new rule that weighed the contacts that each state had to the matter in determining the applicable statute of limitations.[6] Id. at 141.

Heavner involved a products-liability action brought in New

_____

[5] Indeed, the 1971 version of Second Restatement section 142 adhered to this common-law approach. The original version of section 142 instructed that "[a]n action will not be maintained if it is barred by the statute of limitations of the forum" and that "[a]n action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state." Restatement (Second) of Conflicts of Law § 142 (Am. Law Inst. 1971) (emphasis added). In light of evolving choice-of-law jurisprudence and scholarship, the American Law Institute revised section 142 in 1988, reframing it to include a rebuttable presumption favoring the forum state. Restatement (Second) of Conflicts of Law § 142 (1971) (Am. Law Inst., amended 1988).

[6] By this time, this Court had also abandoned the lex loci delicti approach to resolve conflicts of substantive law, instead favoring the governmental-interest analysis. See Mellk v. Sarahson, 49 N.J. 226, 234-35 (1967) (criticizing First Restatement choice-of-law analysis as "unvarying and mechanical" approach that frustrated state public policy).

19

Jersey. The plaintiff, a North Carolina resident, was driving a truck purchased in North Carolina when the truck's tire blew out, causing an accident in North Carolina. Id. at 133-34. The allegedly defective tire was mounted in North Carolina by the defendant Pullman, a Delaware corporation, which also sold the truck to the plaintiff. Id. at 134. The defendant Uniroyal, a New Jersey corporation, was the manufacturer and distributor of Uniroyal tires but was not alleged to have manufactured the defective tire in New Jersey. Ibid.; see also Gantes, supra, 145 N.J. at 487. Both of the defendant corporations did business throughout the United States. Heavner, supra, 63 N.J. at 134.

We found that the only connection between New Jersey and the products-liability action was Uniroyal's incorporation in this State. Id. at 134 n.3. In short, "New Jersey ha[d] no substantial interest in the matter." Id. at 141. We concluded that, despite the fact New Jersey was the forum state, North Carolina's statute of limitations should apply because that was where all the parties were located, where the cause of action arose, and where all relevant incidents occurred. Id. at 134 n.3, 141. The plaintiff's complaint was time barred under North Carolina law and therefore dismissed. Id. at 141-42.

Importantly, we stressed that our ruling was limited to the "factual pattern" in Heavner and that "there may well be

20

situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse."[7]  Id. at 141.

In Gantes v. Kason Corp., 145 N.J. 478 (1996), we further refined our choice-of-law rules guiding the selection of the appropriate statute of limitations among states with interests in the litigation.  Relying on the animating principles of Heavner, we declared that "New Jersey's rule applies a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." Id. at 484.  To determine the state with the greatest interest, we instructed courts to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties."  Id. at 485 (quoting Veazey v. Doremus, 103 N.J. 244,

---

[7] The Heavner Court specifically cited Marshall v. Geo. M. Brewster & Son, Inc. as one example in which New Jersey's "significant interests" would warrant application of New Jersey's statute of limitations, though noting that that case was affirmed using New Jersey's old common-law procedural approach.  Heavner, supra, 63 N.J. at 141 n.6.  In Marshall, the decedent was fatally injured at a Pennsylvania railroad improvement project involving New Jersey contractors, who had their principal places of business in this State.  Ibid.  New Jersey's statute of limitations applied to that wrongful death action brought in this State, despite the fact that decedent and his representative were nonresidents and the injury occurred in another state.  Ibid.

21

248 (1986)).

Gantes involved a Georgia resident who died as a result of an allegedly defective moving part in a Georgia processing plant. Id. at 481-82. Her estate and heirs filed a wrongful death and survivorship products-liability action in this State against the New Jersey company that manufactured, distributed, and sold the part. Ibid. The complaint was filed after Georgia's statute of repose had expired but within New Jersey's two-year statute of limitations, which had been equitably tolled by the discovery rule. Id. at 485-87.

The obvious conflict between New Jersey's and Georgia's limitations periods required an analysis of the two states' interests in resolving the dispute. Ibid. In assessing Georgia's interests, the Court observed that Georgia's legislature enacted its ten-year statute of repose "to eliminate stale claims and stabilize products liability underwriting." Id. at 486 (quoting Chrysler Corp. v. Batten, 450 S.E.2d 208, 212 (Ga. 1994)). Georgia's statute of repose, however, was not implicated because it "is intended only to unburden Georgia courts and to shield Georgia manufacturers from claims based on product defects long after the product has been marketed or sold." Id. at 496. The Court emphasized that a New Jersey lawsuit against a New Jersey manufacturer did not raise concerns of "'open-ended liability' on [Georgia's] insurance industry and

22

stale claims on its courts." Id. at 494. Georgia's public policy, moreover, would not be frustrated by allowing, under New Jersey's statute of limitations, a Georgia resident's wrongful death action to proceed against a New Jersey manufacturer in a New Jersey court. Id. at 498.

In evaluating New Jersey's governmental interests, the Court recognized this State's "strong interest in encouraging the manufacture and distribution of safe products for the public and, conversely, in deterring the manufacture and distribution of unsafe products within the state." Id. at 490. Meritorious products-liability actions that are timely filed and hold manufacturers accountable for dangerous products further that interest. Ibid. In Gantes, the plaintiffs invoked the New Jersey court system to litigate a claim that had a material link to this State. Id. at 492. Unlike Georgia's statute of repose, New Jersey's statute of limitations not only discourages the filing of stale claims, but also, through its discovery rule, advances "flexible, equitable considerations based on notions of fairness to the parties and the justice in allowing claims to be resolved on their merits." Id. at 487. Our Court noted that New Jersey's substantial interest in deterrence outweighed any countervailing concerns about "burdens on domestic manufacturers or [about] fears of forum shopping and increased litigation in the courts of this State." Id. at 493.

23

Accordingly, our Court applied New Jersey's limitations period and permitted the wrongful death lawsuit to proceed. Id. at 499.

## C.

This Court had adopted the governmental-interest test to resolve choice-of-law issues concerning substantive tort law before Heavner and Gantes adopted that test for statutes of limitations. See Mellk, supra, 49 N.J. at 234-35 (finding that advantages of uniformly applying law of state where injury occurred "must yield when an unvarying and mechanical application of this rule would cause a result which frustrates a strong policy of this state while not serving the policy of the state where the accident occurred"); see also Camp Jaycee, supra, 197 N.J. at 139 (noting that "[i]n 1967, we joined with other jurisdictions in abandoning the First Restatement approach to tort cases, embracing the modern governmental interest analysis"). Significantly, our jurisprudence recognized that the application of the governmental-interest test might lead to different choice-of-law results concerning substantive law and statutes of limitations. For example, in Gantes, supra, this Court recognized that Georgia's substantive products-liability law governed and, yet, found that New Jersey had the greater governmental interest in applying its statute of limitations. 145 N.J. at 492-93, 495.

24

The governmental-interest test remained the analytical tool for deciding choice-of-law issues related to substantive tort law and statutes of limitations until P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008). In Camp Jaycee, this Court formally adopted the Second Restatement's most-significant-relationship test in sections 146, 145, and 6 for deciding the choice of substantive law in tort cases involving more than one state. Id. at 142-43. We considered the most-significant-relationship test to be a more nuanced approach than the governmental-interest test. Id. at 142 n.4 (noting that Second Restatement's "most significant relationship test embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration").

We noted, generally, in Camp Jaycee that one of the benefits of the Second Restatement is the use of "presumptions and detailed considerations that bear on conflicts analyses" in deciding choice of law. Id. at 140 (emphasis added). Indeed, "a set of presumptions" is the starting point for judges under the Second Restatement. Ibid. (quoting William L. Reynolds, Legal Process and Choice of Law, 56 Md. L. Rev. 1371, 1388 (1997)); see, e.g., Restatement (Second), supra, § 142 (setting presumption for choice of statutes of limitations in tort cases); Restatement (Second), supra, § 146 (setting presumption for choice of substantive tort law); Restatement (Second),

25

supra, § 188 (setting presumption for choice of contract law).

In Camp Jaycee, supra, we held that in a personal-injury action, the substantive law of the place of injury is presumed to be the governing law under section 146. 197 N.J. at 141. That presumption is not overcome unless some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts under section 145 and the guiding principles enunciated in section 6.[8] Id. at 144-45. Absent another state having a more significant relationship, the substantive law of the injury-site state applies. Id. at 145.

The Camp Jaycee Court was well aware that the Second Restatement had crafted different presumptions to apply in various other scenarios. See id. at 140-41. In Camp Jaycee, choosing between this State's and another state's statute of limitations was not an issue. If it were an issue, we surely would have acknowledged section 142, which is entitled, "Statute of Limitations of Forum." The Court, therefore, had no reason to appraise the Second Restatement's presumption that favors

---

[8] The section 145 factors are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second), supra, § 145. The section 6 factors are listed infra at 31.

applying the forum's statute of limitations in tort cases. See Restatement (Second), supra, § 142.

In Cornett v. Johnson & Johnson, 211 N.J. 362 (2012), the Court did not adopt the Appellate Division's use of the injury-site presumption of Restatement section 146 in determining whether New Jersey's or Kentucky's statute of limitations applied in that products-liability case. See also Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 378-83 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012). Instead, by finding that there was no conflict between the statutes of limitations of the two states, the Court elided the issue of whether the governmental-interest test or the Second Restatement would govern.[9] Cornett, supra, 211 N.J. at 377-78.

---

[9] In Cornett, the plaintiffs' lawsuit expired under Kentucky's one-year statute of limitations, despite its equitable tolling provision, whereas the lawsuit was viable under New Jersey's two-year statute and its equitable discovery rule. Cornett, supra, 211 N.J. at 374, 377-78. The appellate panel in Cornett assumed for purposes of its choice-of-law analysis that there was a conflict. Cornett, supra, 414 N.J. Super. at 378. Compare Ky. Rev. Stat. Ann. § 413.140(1)(a), and Perkins v. Ne. Log Homes, 808 S.W.2d 809, 818-19 (Ky. 1991), with N.J.S.A. 2A:14-2, and Baird v. Am. Med. Optics, 155 N.J. 54, 65-66 (1998). Our Court concluded that, because the two states had equitable tolling provisions, the differences in their limitations periods did not "create a true conflict of laws" because the differences were not "offensive or repugnant to the public policy of this state." 211 N.J. at 377. Going forward, to avoid any confusion, we are establishing a bright-line rule: a conflict of law is present whenever the selection of one statute of limitations over another is outcome dispositive. See Schmelzle, supra, 561 F. Supp. 2d at 1048 ("An actual conflict exists if choosing the [statute of limitations] of one state or

27

D.

Camp Jaycee's adoption of sections 146, 145, and 6 of the Second Restatement to resolve conflicts of substantive law in tort actions with an injury-site presumption was not a signal that we would apply the same choice-of-law test for statutes of limitations. Indeed, the drafters of the Second Restatement did not intend that sections 146 and 145 would be used for statute-of-limitations choice-of-law determinations. That is so because the American Law Institute crafted section 142 of the Second Restatement precisely to address statutes of limitations as an independent issue for choice-of-law purposes. The rationales for whether the forum state's substantive law or statute of limitations should govern are different. That was evident in Gantes, supra, where Georgia's products-liability law governed, but New Jersey's statute of limitations applied. 145 N.J. at 492-93, 495-96.

The essential purpose of substantive tort law is to provide a remedy to a party who has been wronged, see Fu v. Fu, 160 N.J. 108, 123 (1999), whereas the essential purpose of a statute of

---

the other is outcome determinative." (citation omitted)); see also Spence-Parker v. Del. River & Bay Auth., 656 F. Supp. 2d 488, 497 (D.N.J. 2009) (reinforcing that only if "there is no divergence between the potentially applicable laws" is court not presented with conflict). To be clear, when a lawsuit is filed timely under one state's statute of limitations but not under another's, a conflict of law exists, and a choice-of-law analysis is required.

28

limitations is to encourage litigants to file timely claims and to bar the litigation of stale claims, see Gantes, supra, 145 N.J. at 486. Those differences were recognized in the common law and are recognized by the presumptions in Second Restatement sections 146 and 142.

There are strong policy reasons for this Court to adopt section 142 as the choice-of-law rule for statutes of limitations. Incorporating section 142 into our choice-of-law analysis for tort purposes completes the conversion from the governmental-interest standard to the Second Restatement begun in Camp Jaycee.

We therefore turn to a discussion of section 142 of the Second Restatement.

E.

The Second Restatement recognizes that when the forum state has a substantial interest in litigation brought in its courts, the forum state's statute of limitations, ordinarily, will apply. Section 142 provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of

29

limitations permitting the claim unless:

    (a)   maintenance of the claim would serve no substantial interest of the forum; and

    (b)   the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

[Restatement (Second), supra, § 142.]

Section 142's presumption, like other presumptions in the Second Restatement, channels judicial discretion and advances notions of uniformity and predictability. Under section 142(2)(a), the statute of limitations of the forum state generally applies whenever that state has a substantial interest in the maintenance of the claim. See Restatement (Second), supra, § 142(2). In that circumstance, the inquiry ends for statute-of-limitations purposes, unless exceptional circumstances would render that result unreasonable. Restatement (Second), supra, § 142. Only when the forum state has "no substantial interest" in the maintenance of the claim does a court consider section 142(2)(b) -- whether "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Restatement (Second), supra, § 142(2)(a)-(b). In determining whether another state has a more significant relationship to the parties and the occurrence, a court must

30

then consider overarching choice-of-law principles embodied in the factors in section 6:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.
>
> [Restatement (Second), supra, § 6(2).]

Section 142 benefits from an ease of application; places both this State's and out-of-state's citizens on an equal playing field, thus promoting principles of comity; advances predictability and uniformity in decision-making; and allows for greater certainty in the expectations of the parties.

Second Restatement section 142 makes clear that when New Jersey has a substantial interest in the litigation and is the forum state, it will generally apply its statute of limitations. See Restatement (Second), supra, § 142(2). That rule is consistent with our holding in Gantes, supra, in which we

31

allowed an out-of-state citizen to pursue a products-liability action against a New Jersey manufacturer in our state courts because of New Jersey's substantial interest in ensuring the manufacture and distribution of safe products.  145 N.J. at 490. When claims are timely filed by a New Jersey or another state's resident, and New Jersey has a substantial interest in the litigation, providing parity between an in-state and out-of-state citizen makes perfect sense in a system sensitive to interstate comity.

This rule also benefits New Jersey companies.  Under the Appellate Division's application of Second Restatement sections 146 and 145, the statute of limitations of the state where the injury occurred would presumptively apply even when the New Jersey limitations period had expired.  In that circumstance, the out-of-state citizen could proceed with a claim when a New Jersey resident could not if the injury had occurred in this State.  That deprives New Jersey companies of the protections of this State's statute of limitations against another state's longer limitations period.

A New Jersey company, generally, should not have to defend against a claim that is stale under this State's statute of limitations in our courts, whether that claim is brought by a New Jersey resident or a citizen of another state.  When a plaintiff from another state with a longer limitations period

32

seeks to press a claim against a New Jersey manufacturer in our state courts after New Jersey's statute of limitations has expired, section 142 ordinarily will not permit the claim to proceed. See Restatement (Second), supra, § 142(1) (stating that absent "exceptional circumstances" that would make result "unreasonable," "[t]he forum will apply its own statute of limitations barring the claim"). Moreover, when New Jersey has no substantial interest in the litigation, under section 142, our courts will not apply our State's statute of limitations to save a claim when another state has a more significant relationship to the case. See Restatement (Second), supra, § 142(2).

Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP, 426 N.J. Super. 582 (App. Div. 2012), illustrates this point. In that case, the plaintiff -- a former partner in a New York City law firm -- filed a malicious-abuse-of-process lawsuit against the law firm. Id. at 585. By the time the lawsuit was filed, New York's one-year statute of limitations had expired, but New Jersey's two-year limitations period had not. Ibid.

In light of Camp Jaycee's adoption of the Second Restatement to resolve substantive tort law conflicts, the appellate panel predicted that this Court would "apply the 'most significant relationship' test of section 142 in determining the applicable statute of limitations" in tort cases. Id. at 589.

Although the plaintiff was a New Jersey resident, the firm's primary office was in New York, where the plaintiff worked. Id. at 584. Previously, the firm had filed an action in New York Supreme Court claiming that the plaintiff breached contractual and fiduciary duties based on his allegedly improper conduct in New York. Ibid. The firm's New York claim ultimately was dismissed, which led to the malicious-abuse-of-process lawsuit filed by the plaintiff in New Jersey. Id. at 584-85.

In an opinion authored by Judge Skillman, the panel concluded that New Jersey did not have a substantial interest in "protecting its residents from financial harm arising from their professional activities in another state" and that New York "clearly ha[d] 'a more significant relationship to the parties and the occurrence' than New Jersey." Id. at 589-90 (quoting Restatement (Second), supra, § 142(2)(b)). Accordingly, the panel affirmed the dismissal of the action, applying New York's one-year statute of limitations. Id. at 591. Also of interest is Judge Skillman's observation that application of section 142 in that case did "not generally differ substantially from the 'governmental interest' test the Court used in Heavner and Gantes." Id. at 589.

We agree that the results in Heavner and Gantes would be no different under a Second Restatement section 142 analysis than the actual results reached by the Court in those cases using the

34

governmental-interest test. But there are meaningful distinctions between section 142 and the governmental-interest test. Section 142's presumption in favor of a forum state with a substantial interest in the litigation can be overcome only by exceptional circumstances that would render that result unreasonable. Under the governmental-interest test, a forum state's substantial interest in the litigation is a significant factor -- but not a conclusive one -- to be weighed against the interests of another state connected with the parties or the occurrence. Section 142 is a less malleable standard than the governmental-interest test. For all practical purposes, under section 142, once a court finds that the forum state has a substantial interest in the litigation, the inquiry is at an end.

It bears mentioning, however, that, under both tests, when the forum state has no interest in the litigation and the claim is barred by another state's statute of limitations, the forum state generally should not entertain the claim. Restatement (Second), supra, § 142 cmt. g; see also Heavner, supra, 63 N.J. at 134 n.3, 141. "[E]gregious examples of forum shopping" will be discouraged when a forum state that has no interest in the litigation declines to apply its favorable statute of limitations. Restatement (Second), supra, § 142 cmt. g.

We are persuaded that section 142, with its presumption

35

favoring a forum state with a substantial interest in the matter, will channel judicial discretion to ensure a higher degree of uniformity and predictability in resolving choice-of-law issues.

We now apply the principles of section 142 to the facts of this case.

IV.

In this failure-to-warn products-liability action filed in New Jersey, plaintiff presented evidence that (1) defendants Hoffmann-La Roche, Inc., and Roche Laboratories, Inc., were New Jersey corporations, which maintained their corporate offices in this State; (2) defendants designed, manufactured, distributed, and labeled the prescription drug Accutane in New Jersey; (3) defendants' labeling inadequately warned plaintiff of the potential risks associated with the taking of Accutane; (4) plaintiff, an Alabama resident, relied on the inadequate warnings when his physician prescribed, and he took, Accutane to treat his acne in Alabama; and (5) the taking of Accutane proximately caused his inflammatory bowel disease, which led to multiple surgeries and other treatment modalities in Alabama.

Under section 142 of the Second Restatement, New Jersey, as the forum state, presumptively applies its own statute of limitations unless (1) New Jersey has no significant interest in the maintenance of the claim and Alabama, whose statute has

36

expired, has "a more significant relationship to the parties and the occurrence," Restatement (Second), supra, § 142(2)(a)-(b); or (2) given "the exceptional circumstances of the case," following the Second Restatement rule would lead to an unreasonable result, Restatement (Second), supra, § 142. In light of section 142, if New Jersey has a substantial interest in the litigation, the inquiry ends, and New Jersey applies its statute of limitations, provided there are no "exceptional circumstances" making that "result unreasonable." Restatement (Second), supra, § 142. Therefore, we first turn to whether New Jersey has a significant interest in the products-liability claim filed by plaintiff against Roche.

New Jersey has a substantial interest in deterring its manufacturers from developing, making, and distributing unsafe products, including inadequately labeled prescription drugs. See Gantes, supra, 145 N.J. at 490. Our State's interest extends to protecting not just the citizens of this State, but also the citizens of other states, from unreasonably dangerous products originating from New Jersey. Cf. id. at 497-98. We have never taken the parochial attitude that the health and safety of our State's citizens are of greater concern or worth than the health and safety of citizens of another state. Our national compact and our interstate system suggest that we should treat the citizens of other states as we treat our own.

37

It would make little sense, if we were to find that New Jersey had a substantial interest in the maintenance of a lawsuit, to discriminate against an out-of-state plaintiff whose lawsuit was filed within our limitations period.  We cannot conclude that "maintenance of the claim would serve no substantial interest" of this State.  Restatement (Second), supra, § 142(2)(a).

Only if we found that New Jersey had "no substantial interest" would we address the second issue, which is whether "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."  Restatement (Second), supra, § 142(2)(a)-(b).  Were we to address that issue, we would recognize that Alabama has a significant relationship to the parties and the occurrence.  But, even in light of the section 6 factors, it would not be self-evident that Alabama has a more significant relationship than that of New Jersey.  See Restatement (Second), supra, § 6(2)(a)-(g).

Clearly, Alabama has a substantial interest in ensuring that pharmaceutical products entering its borders are safe for use by its citizens.  See Casrell v. Altec Indus., Inc., 335 So. 2d 128, 131 (Ala. 1976) ("[D]efendants must pay the consequences of placing an unreasonably dangerous or defective product on the market.").  But Alabama's statute of limitations is intended primarily to protect its manufacturers, and others, from stale

38

claims brought in its courts. See Travis v. Ziter, 681 So. 2d 1348, 1355 (Ala. 1996) (noting that statutes of limitations "promote[] stability by protecting defendants from stale claims"); see also Restatement (Second), supra, § 142 cmt. f ("A state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'" (emphasis added)). Alabama does not have an interest in depriving one of its citizens of securing redress from a pharmaceutical company in another state where the statute of limitations has an equitable tolling feature. Cf. Gantes, supra, 145 N.J. at 493-98. Stated differently, Alabama has no interest in denying one of its injured citizens the same relief an injured New Jersey citizen could obtain for the same wrong in a New Jersey court.

Last, the Second Restatement provides that, even when the forum state's statute of limitations would apply under a section 142(a) and (b) analysis, the Court retains a small window of discretion to override that outcome. Restatement (Second), supra, § 142. A court is not required to apply the forum state's limitations period if there are "exceptional circumstances" that will "make such a result unreasonable." Ibid. In this case, no such "exceptional circumstances" are present.

In summary, New Jersey's statute of limitations governs because we cannot conclude that "maintenance of the claim would

39

serve no substantial interest" of this State and because there are no "exceptional circumstances" that call for the application of Alabama's limitations period. Restatement (Second), supra, § 142(2)(a).

Although we are adopting a different choice-of-law framework for determining whether the forum state's or another state's statute of limitations will apply, had we conducted a governmental-interest test, the result here would be no different -- New Jersey's statute of limitations would govern. We nevertheless believe that our adoption of section 142 is a further refinement of our choice-of-law jurisprudence that will guide judicial discretion toward more predictable and just outcomes.

V.

For the reasons expressed, we reverse the judgment of the Appellate Division, which dismissed plaintiff's verdict and damages award and extinguished his cause of action because the Alabama statute of limitations had expired. We hold that, based on a choice-of-law analysis under section 142 of the Second Restatement, New Jersey's limitations period governs, and therefore plaintiff's action was timely filed. We also note that the trial court arrived at the same outcome using the then-prevailing governmental-interest test. We therefore reinstate plaintiff's verdict and damages award and remand to the

40

Appellate Division for consideration of the unaddressed issues remaining on appeal.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON did not participate.