722 A.2d 578 (1999)
317 N.J. Super. 457
Joseph and Diane ACCARDI, Plaintiffs-Appellants,
v.
ENVIRO-PAK SYSTEMS COMPANY, INC., Defendant-Respondent,
and
Deco Maintenance Company, Inc., Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted January 5, 1999.
Decided January 27, 1999.
*579 Purcell, Reis, Shannon, Mulcahy & O'Neill, Bedminster, for plaintiffs-appellants (Kevin Kovacs, of counsel and on the brief).
Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, for defendant-respondent (James B. Moran, of counsel and on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
Plaintiff Joseph Accardi, an employee of Rapid Disposal, Inc. (Rapid), was injured when struck by the door of a dumpster he was storing on land owned by defendant Enviro-Pak Systems Company, Inc. (Enviro).[1] At the conclusion of the evidence, defendant moved for judgment, R. 4:40-1. The trial judge, relying on Majestic Realty Associates. v. Toti Contracting Co., 30 N.J. 425, 153 A.2d 321 (1959), dismissed plaintiffs' complaint.[2] We reverse and conclude that there were factual issues for the jury to consider as to the control retained by defendant over plaintiff's activity on defendant's property.
We briefly recite the relevant facts. Plaintiff was employed as a dispatcher for Rapid, a residential and commercial trash hauler. In connection with its business, Rapid used large dumpsters approximately thirty feet in length, eight feet wide and six feet deep. The dumpsters had an open top and front panel which opened on hinges. For storage, dumpsters were turned on their sides and slid inside other dumpsters; however, such storage required maneuvering the inner dumpster so as to avoid damage to its components as well as to protect against the door falling and injuring someone. While the dumpsters were being moved, their doors were secured by a chain and fastened.
On June 15, 1993, plaintiff responded to a call from his supervisor, Geoffrey Ballah, to assist with storage of Rapid's dumpsters on the property of defendant,[3] an affiliated corporation that ran a recycling center. Ballah called upon plaintiff to assist him with the task; this was the first time plaintiff ever witnessed or participated in this procedure. After moving the first set of dumpsters to the desired position, Ballah instructed plaintiff to remove the chain securing the outer dumpster's doorway so that it could be used to secure a new set of dumpsters for transport. When plaintiff removed the chain from the outer dumpster, the door of the inner dumpster dropped on him, causing his injuries.
The relationship between defendant and Rapid was explored at trial. Steve DiNardi was the president and one-third owner of both Rapid and Enviro. The remaining two-thirds were owned by his brother and sister. Both corporations were run as a "small family business," with DiNardi acting as the "top person" in both. As to the daily operations, however, Geoffrey Ballah was the "operations manager" at Rapid, and Anthony Pannella was the "operations manager" at Enviro. Plaintiff testified that Ballah was plaintiff's supervisor at Rapid.
Conflicting testimony was presented as to the relationship between Ballah and Pannella. Clearly, Ballah had more seniority with the DiNardi companies. DiNardi noted that Ballah performed "supervisory services" for Enviro, including supervision of "basic operations and Mr. Pannella." DiNardi stated that although Pannella ran Enviro, he could "look up to [Ballah] to get information on ... how something may be handled." Further, if Pannella was out, the other Enviro employees could seek out Ballah for instruction. *580 During a N.J.R.E. 104 hearing without the jury present, DiNardi explained that while Ballah was not paid by Enviro, responsibility overlapped because it was a small company Ballah and Pannella "worked close, hand-in-hand, because the Rapid Disposal vehicles dumped material at the Enviro-Pak facility." Ballah testified that he did have supervisory responsibilities at Enviro, as Pannella reported to him. Plaintiff corroborated that Pannella worked "under Ballah."
Beyond the general organizational structure of the companies, the circumstances surrounding the specific dumpster storage procedure implemented on Enviro's property was also explored. Rapid stored up to thirty of its dumpsters on Enviro's property at a time, always without charge. According to DiNardi, he ultimately made the decision to store Rapid's dumpsters on Enviro's property, but he was unable to distinguish whether he made the decision as president of Rapid or Enviro. Essentially, he decided to store the dumpsters at Enviro in order to "utilize additional space available to my businesses." Finally, DiNardi testified that the actual procedure of storing the dumpsters was left to Ballah's discretion, but he was aware of the process Ballah implemented. In sum, the lines of authority and control were not clearly defined as between Rapid and defendant.
Against this factual framework, we apply the applicable principles of law. "As a general rule, a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." Dawson v. Bunker Hill Plaza Assoc., 289 N.J.Super. 309, 317, 673 A.2d 847 (App.Div.) (quoting Kane v. Hartz Mountain Indus., 278 N.J.Super. 129, 140, 650 A.2d 808 (App.Div.1994), aff'd, 143 N.J. 141, 669 A.2d 816 (1996)), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); Cassano v. Aschoff, 226 N.J.Super. 110, 114-15, 543 A.2d 973 (App.Div.), certif. denied, 113 N.J. 371, 550 A.2d 476 (1988); see also Morris v. Krauszer's Food Stores, Inc., 300 N.J.Super. 529, 534-35, 693 A.2d 510 (App.Div.1997) ("The duty of the owner or possessor of land to protect business invitees from foreseeable harm is well established."). Clearly, this general rule operates to protect individuals performing work on the premises of the landowner, most commonly independent contractors and their employees. Cassano, supra, 226 N.J.Super. at 115, 543 A.2d 973; see, e.g., Dawson, supra, 289 N.J.Super. at 315, 673 A.2d 847 (carpenter employed by independent contractor injured while erecting roof trusses on the defendant's property); Kane, supra, 278 N.J.Super. at 134, 650 A.2d 808 (steelworker employed by independent contractor injured while constructing steel structure for landowner's warehouse); see also Restatement (Second) of Torts sec. 332 and comments e and j (1964) (including industrial employees in definition of business visitor invitee).
It is equally well-settled that the "landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." Dawson, supra, 289 N.J.Super. at 318, 673 A.2d 847; see Kane, supra, 278 N.J.Super. at 140, 650 A.2d 808. An independent contractor is one "who, in carrying on an independent business, contracts to do a piece of work according to his own methods without being subject to the control of the employer as to the means by which the result is to be accomplished but only as to the result of the work." Bahrle v. Exxon Corp., 145 N.J. 144, 157, 678 A.2d 225 (1996). This exception is carved out of the landowner's general duty to protect his invitees because the landowner may assume that the independent contractor and her employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety. Dawson, supra, 289 N.J.Super. at 318, 673 A.2d 847; Cassano, supra, 226 N.J.Super. at 115, 543 A.2d 973.
This exception to the landowner's general duty of care is not absolute where the landowner retains a duty to exercise reasonable care for work involving independent contractors: first, where the landowner retains control over the "manner and means of the doing of the work which is the subject of the contract;" second, where the landowner hires an incompetent contractor; or third, where the activity contracted for constitutes a nuisance per se. Dawson, supra, 289 *581 N.J.Super. at 318, 673 A.2d 847. These exceptions are the rule of Majestic Realty, supra, 30 N.J. at 431, 153 A.2d 321, utilized by the trial court here.
We conclude that neither Majestic Realty nor the independent contractor exception to a landowner's duty to exercise reasonable care applies under the facts presented here. Rapid entered defendant's premises for the sole purpose of storing its own property for its own benefit. Rapid never contracted to do any work for defendant and was not acting as defendant's agent. As such, Rapid was not an independent contractor of defendant. However, a significant jury issue was presented as to defendant's general duty as a landowner or occupant, including retention of control over the manner, methodology and placement of storage of the dumpsters on defendant's property. Whether Ballah was acting on behalf of defendant or Rapid was an issue for the jury, not for the trial judge on motion. The jury could have decided that given the interconnected relationship of the entities combined with the vague and ofttimes obscured lines of authority, defendant controlled the storage operation thus subjecting it to potential liability. We agree with the conclusion reached by the trial judge that the work performed did not create an inherently dangerous condition.
Plaintiff is entitled to have the jury consider whether defendant is liable as the landowner based on the factual dispute as to the control exercised by defendant in the dumpster storage process.
Reversed and remanded for a new trial.
NOTES
[1] Plaintiff also joined an affiliated company, Deco Maintenance Company, Inc., as a defendant. Deco was dismissed as a defendant by stipulation of the parties.
[2] Plaintiff's wife, Diane Accardi, was a named plaintiff on her per quod claim. For ease of reference, we will refer Joseph Accardi as plaintiff in the singular.
[3] The property was actually owned by River Road Realty, a partnership of Rapid's principal. The partnership leased the property to Enviro.