**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0595-17T3

JANE M. CICHOSKI,

      Plaintiff-Appellant,

v.

RICHARD TURICK and
CAROL E. TURICK,

      Defendants-Respondents.

_____

Argued October 10, 2018 – Decided November 2, 2018

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2076-15.

Scott D. Zucker argued the cause for appellant (Sciarrillo, Cornell, Merlino, McKeever & Osborne, LLC, attorneys; Nicholas F. Savio, of counsel and on the briefs).

Harold H. Thomasson argued the cause for respondents (Amy F. Loperfido & Associates, attorneys; Harold H. Thomasson, on the brief).

PER CURIAM

Plaintiff Jane M. Cichoski appeals from an order filed by the Law Division on July 25, 2017, which granted summary judgment in favor of defendants Richard Turick and Carol E. Turick (Ms. Turick), and an order filed on September 29, 2017, which denied plaintiff's motion for reconsideration. We affirm.

Plaintiff filed a complaint against defendants seeking damages for injuries she sustained when she was bitten by defendants' dog, a golden retriever named Harrison. Plaintiff claimed defendants were strictly liable under the so-called dog-bite statute, N.J.S.A. 4:19-16. Plaintiff also claimed defendants were negligent in failing to control their dog and allowing the dog to bite her. Defendants filed an answer denying liability. After the parties engaged in discovery, defendants filed a motion for summary judgment, which plaintiff opposed.

The record before the trial court on the summary judgment motion reveals the following. In June 2010, plaintiff obtained a dog-grooming certificate from a school in Michigan, and since October 2010, has operated a dog-grooming business in Long Branch. Beginning in 2011, defendants brought Harrison to plaintiff to be groomed. When defendants first brought Harrison for grooming, they informed plaintiff the dog "was a little problematic."

A-0595-17T3

Plaintiff claims she interpreted this statement to mean Harrison did not "care to be groomed." Plaintiff placed a muzzle on the dog every time she groomed him because she did not "want any of [her] employees to get hurt and [she] felt it was safer." Plaintiff groomed Harrison six or more times before June 6, 2013, when Ms. Turick brought Harrison to plaintiff's business. On that date, defendants arranged to have plaintiff bathe the dog, cut his hair, clean his ears, and trim his nails. As she had done in the past, plaintiff put a muzzle on the dog.

Plaintiff bathed and dried Harrison, and there was no indication he was agitated or aggressive. Plaintiff then began to trim the hair around Harrison's rear when he suddenly pulled the muzzle off with his paw, whipped his head around, and bit plaintiff once on her left arm. According to plaintiff, the dog sunk his teeth into her arm and shook it. Plaintiff screamed loudly, after which Harrison released his grip on plaintiff's arm.

Plaintiff went to the Monmouth Medical Center for treatment. While in the waiting area, Ms. Turick arrived at the hospital. According to plaintiff, Ms. Turick was very upset. She apologized and told plaintiff she wanted to pay her medical bills. Plaintiff was treated for about ten puncture wounds, one of which

was sutured, and she was given antibiotics. Plaintiff was discharged from the hospital the same day.

When plaintiff awoke the next day, she noticed her arm was enlarged and discolored. After consulting her primary care physician, plaintiff returned and was admitted to the hospital. Plaintiff stayed in the hospital for about six days. Plaintiff was treated with antibiotics and pain medication. She also was given a soft cast to wear in the hospital and instructed to wear the cast for five additional weeks.

After plaintiff was discharged from the hospital, she attended physical therapy, but ceased attending after four or five sessions because her insurance did not cover the therapy. Plaintiff continued, however, to do the recommended exercises at home. She also saw a neurologist for potential nerve damage, but the test results were negative.

At her deposition, plaintiff testified that due to her injuries, she was unable to work for approximately six weeks and closed her business on days where no one was available to replace her. She also stated that, due to the incident, she still gets occasional pain and swelling in her wrists and no longer likes to groom big dogs.

4

The judge heard oral argument on defendants' summary judgment motion, and on July 25, 2017, placed a decision on the record. The judge concluded there were no genuine issues of material fact, and defendants were entitled to judgment as a matter of law. The judge applied the principles enunciated in Reynolds v. Lancaster County Prison, 325 N.J. Super. 298 (App. Div. 1999), where we held that an independent contractor who agrees to care for a dog could not assert a claim against a dog owner under N.J.S.A. 4:19-16 for a dog bite unless the dog owner "purposefully or negligently conceals a particular known hazard from the" independent contractor. Id. at 324 (quoting Nelson v. Hall, 211 Cal. Rptr. 668, 673 n.4 (1985)). The judge found that Reynolds applies to persons like plaintiff, who are engaged in the commercial dog-grooming business.

The judge pointed out that it was undisputed that defendants had put plaintiff on notice that Harrison might bite while being groomed. The judge stated that plaintiff had knowledge of the risk, not just through her professional training and experience, but due to her experience with this particular dog. The judge noted that plaintiff had chosen "to muzzle [Harrison] each and every time the dog was [brought to] her to be groomed."

A-0595-17T3

On July 25, 2017, the judge entered an order granting summary judgment to defendants. Plaintiff then filed a motion for reconsideration. The judge heard oral argument on the motion and placed a decision on the record, finding there was no basis to reconsider her decision. On September 29, 2017, the judge filed an order denying the motion. This appeal followed.

On appeal, plaintiff argues: (1) the trial court erred by concluding that like a veterinarian, a dog groomer "assumes the risk of a dog bite when working with a dog with no legal basis o[r] factual testimony that would align the two professions[;]" (2) the motion judge "did not consider that defendants purposefully concealed the dog's violent propensity from plaintiff[;]" and (3) "the trial court failed to properly apply the summary judgment standard."

When reviewing a trial court's order granting summary judgment, we apply the same standard the trial courts apply in considering a summary judgment motion. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998) (citing Antheunisse v. Tiffany & Co., 229 N.J. Super. 399, 402 (App. Div. 1988)). The trial court should grant summary judgment if "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

6

Furthermore, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). The court should "not resolve contested factual issues[,]" but rather "determine[] from the record whether the alleged factual disputes are genuine." Davidovich v. Isr. Ice Skating Fed'n, 446 N.J. Super. 127, 158 (App. Div. 2016) (citing Agurto v. Guhr, 381 N.J. Super. 519, 525 (App. Div. 2005)).

In addition, we must determine "whether the motion judge's application of the law was correct." Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 231 (App. Div. 2006) (citing Prudential, 307 N.J. Super. at 167). We need not defer to the trial court's legal determinations, which we review de novo. Davidovich, 446 N.J. Super. at 159 (citing W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The dog-bite statute states, in relevant part:

> [t]he owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former

viciousness of such dog or the owner's knowledge of such viciousness.

[N.J.S.A. 4:19-16.]

"To recover under [the statute], a plaintiff must prove that the defendant owned the dog, that the dog bit the plaintiff, and that the plaintiff was in a public place or lawfully on the owner's property." DeRobertis v. Randazzo, 94 N.J. 144, 158 (1983). "Satisfaction of the elements of the statute imposes strict liability . . . for damages sustained by [the] plaintiff." Pingaro v. Rossi, 322 N.J. Super. 494, 503 (App. Div. 1999) (citing Jannuzzelli v. Wilkens, 158 N.J. Super. 36, 39 (App. Div. 1978); Tanga v. Tanga, 94 N.J. Super. 5, 12 (App. Div. 1967)).

However, in Reynolds, we recognized an exception to the imposition of strict liability. We held that:

> [w]hen a dog owner turns his dog over to an independent contractor who has agreed to care for the dog, the owner is not liable under the dog-bite statute when the dog bites the independent contractor unless the owner knew, or had reason to know, the dog was vicious and withheld that information. Similarly, under the doctrine of primary assumption of the risk, as described in Emmons[ v. Stevane, 77 N.J.L. 570, 573-74 (E. & A. 1908)], it would appear that an owner would not be liable under the statute to an independent contractor who undertakes the care of a domestic animal with knowledge that it is particularly dangerous.
>
> [Reynolds, 325 N.J. Super. at 324.]

On appeal, plaintiff argues that the motion judge erred by applying Reynolds to persons engaged in the commercial dog-grooming business. Plaintiff asserts there was no expert report likening dog groomers to veterinarians with regard to assumption of the risk of being bitten by a dog. Plaintiff notes that veterinarians must be licensed, while dog groomers do not need a license. Plaintiff argues that comparing a veterinarian to a dog groomer is like comparing a medical doctor to a hairdresser. We disagree.

The principles enunciated in Reynolds are not confined to veterinarians. The plaintiff in Reynolds worked for a guard dog company as a dog handler and he was seriously injured when one of the company's dogs attacked him. Id. at 306. The Reynolds court noted that in general, a landowner has the duty to "use reasonable care to protect independent contractors [from] known or reasonably discoverable dangers." Id. at 321-22 (citing Kane v. Hartz Mountain Indus., 278 N.J. Super. 129, 140 (App. Div. 1994), aff'd, 143 N.J. 141 (1996); Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 462 (App. Div. 1999)).

The court also relied on Nelson v. Hall, 211 Cal. Rptr. 668 (1985), in which the California Court of Appeal held that a veterinarian could not recover under the California dog-bite statute based on assumption of the risk. Reynolds, 325 N.J. Super. at 323-24. The Reynolds court held that "a veterinarian has all

of the characteristics of an independent contractor" and "the owner [of a dog] is not liable under the dog-bite statute when the dog bites the independent contractor unless the owner knew, or had reason to know, the dog was vicious and withheld that information." Id. at 324.

Thus, Reynolds applies to any independent contractor who "agree[s] to care for a dog." Ibid. Such persons include individuals like plaintiff, who are engaged in the business of grooming dogs. These individuals are "aware of the risk that any dog, regardless of its previous nature, might bite while being" groomed. Ibid. (quoting Nelson, 211 Cal. Rptr. at 709).

We therefore reject plaintiff's contention that there was insufficient evidence before the trial court to support the conclusion that dog groomers assume the risk of a dog bite in the same manner as veterinarians. Expert testimony comparing the education, training, and experience of veterinarians and dog groomers was not required. Moreover, Reynolds dealt with a dog handler, not a veterinarian. Id. at 306.

In denying plaintiff's motion for reconsideration, the judge stated, "Whether it's as a veterinarian or a guard dog or a dog groomer, someone going into a business dealing with dogs, as any lay person would know, that dogs are capable of biting humans." Furthermore, in her deposition testimony, plaintiff

10

stated that she is in the commercial dog-grooming business, and being bitten by dogs "goes with the territory."

Plaintiff further argues that the motion judge erred in her application of the summary judgment standard. She contends there was a genuine issue of material fact as to whether defendants concealed the dog's "violent past." Plaintiff asserts that defendants never told her that Harrison had "violent propensities."

Plaintiff notes that although Ms. Turick stated in her certification that the dog had "nipped" her and her sister, she never informed plaintiff of these incidents. As we noted previously, plaintiff asserts that any warning she received led her to believe the dog did not like to be groomed. She states she did not have an "understanding from the warning that the dog might violently and viciously attack her."

We are convinced, however, that the trial court correctly concluded that, based on the evidence presented, a reasonable fact-finder could only reach one conclusion – specifically, that plaintiff had sufficient warning Harrison might bite her while he was being groomed. As we stated previously, plaintiff muzzled Harrison on at least six prior occasions when she groomed him, including his first visit to her business. Plaintiff admitted she muzzled the dog "because [she

11

didn't] want any of [her] employees to get hurt and [she] felt it was safer." The judge determined that "a reasonable fact-finder could . . . only conclude that the purpose for muzzling a dog was an attempt to prevent a dog bite[.]"

The record supports the judge's decision. The judge correctly found that there was no genuine issue of material fact as to whether plaintiff was warned that Harrison might bite while being groomed. The judge correctly determined that the evidence on this issue was "so one-sided" that defendants were entitled to "prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Plaintiff's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION