**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1679-22

ESTATE OF WILLIAMS
SARAVIA, by his duly appointed
Administrator Ad Prosequendum,
GUILLERMO E. GINARTE,

     Plaintiff-Appellant,

v.

BAYONNE DRY DOCK &
REPAIR CORP.,

     Defendant/Third-Party
     Plaintiff-Respondent,

 and

PATRIOT CONTRACT
SERVICES, LLC,

     Defendant.

_____

BAYONNE DRY DOCK &
REPAIR CORP.,

     Third-Party Plaintiff/
     Respondent,

v.

5 SEASONS LSB CORPORATION,

> Third-Party Defendant-
> Respondent.

_____

Submitted March 12, 2024 – Decided August 13, 2024

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1997-20.

Ginarte Gonzalez & Winograd, LLP, attorneys for appellant (Sean T. Payne and Richard M. Winograd, on the briefs).

Michael E. Stern (Rubin, Fiorella, Friedman & Mercante LLP) and James E. Mercante (Rubin, Fiorella, Friedman & Mercante LLP), attorneys for respondent Bayonne Dry Dock & Repair Corp.

PER CURIAM

On April 19, 2020, laborer/painter Williams Saravia was working for 5 Seasons LSB Corporation, which was sub-contracted by Bayonne Dry Dock & Repair Corp., to provide maintenance services aboard the USNS Red Cloud, a United States Naval Vessel. While working without safety equipment, Saravia fell to his death. Plaintiff Estate of Williams Saravia by his duly appointed Administrator Ad Prosequendum, Guillermo E. Ginarte, sued Bayonne Dry

Dock and Patriot Contract Services, LLC, the prime contractor for the maintenance project alleging their negligence caused Saravia's death.

Plaintiff appeals the summary judgment dismissal of his negligence complaint against Bayonne Dry Dock. We affirm substantially for the same cogent reasons expressed by Judge Veronica Allende that Bayonne Dry Dock owed no duty of care to Saravia.

I.

We glean the following facts from the summary judgment record, viewing them in the light most favorable to plaintiff as the non-moving party. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). Bayonne Dry Dock, a general contractor, subcontracted with 5 Seasons to assist it in performing maintenance on the USNS Red Cloud. Bayonne Dry Dock had hired 5 Seasons on four prior occasions to perform similar work with nothing in the record indicating that 5 Seasons failed to perform its tasks in accordance with the required safety guidelines. Under its sub-contract agreement, 5 Seasons was obligated to observe all Occupational Safety and Health Administration (OSHA) regulations and other applicable state and federal safety laws and regulations in performing its work.

A-1679-22

Saravia, along with his supervisor and four 5 Seasons co-workers, were directed to paint the inside of the USNS Red Cloud's anchor chain locker—a compartment where the ship's anchor chain is stored during travel. The compartment is approximately thirty feet deep, accessible by one of two manholes covered by access hatches.  Prior to painting, the workers had to build scaffolding.  A notice, based on an inspection of atmospheric testing by Bayonne Dry Dock, indicated entry into anchor chain locker "was permitted and safe."

Before Saravia and the others entered the anchor chain locker, the supervisor, using hand signals, informed them "to wait . . . to take a rest" until he returned with "fall protection" such as "safety harnesses."  The supervisor, whose first language is Korean, "pointed to the hatch and then represented not to go in the hatch and then take a rest, using [his] hands."  Saravia's first language was Spanish, though he spoke some basic English.  Saravia's co-worker did not wait for the safety equipment and descended into the anchor chain locker.  Saravia followed, using only a rope secured to a pipe to descend. When the co-worker had reached the bottom of the anchor chain locker, he

4

heard Saravia shout "I cannot hold on any longer. I'm losing my grip."[1] Saravia fell to the bottom of the anchor chain locker, suffering multiple traumas. He was pronounced dead at the scene. There was no Bayonne Dry Dock employee in the anchor chain locker hatch area when Saravia and his co-worker entered the anchor chain locker without safety equipment.

## II.

Plaintiff filed a negligence action against defendants, seeking damages for Saravia's injuries and death. Following discovery, plaintiff dismissed its claims against Patriot Contract Services with prejudice and Bayonne Dry Dock moved for summary judgment dismissal of the complaint.

### Summary Judgment Motion

Judge Allende granted Bayonne Dry Dock's summary judgment motion. Her written decision stated that "[u]pon viewing all the evidence . . . no genuine dispute of material fact exists regarding whether [Bayonne Dry Dock] owed a duty of care" to Saravia. The judge cited Muhammad v. N.J. Transit, which held that "a general contractor typically enjoy[s] broad immunity from liability for injuries to an employee of a subcontractor resulting from either the condition of the premises or the manner in which the hired work was

---

[1] The record is unclear what language Saravia was speaking.

A-1679-22

performed." 176 N.J. 185, 198-99 (2003). The judge noted plaintiff failed to cite exceptions to this general rule, as recognized in Tarabokia v. Structure Tone, where we ruled liability may be found when a general contractor controls the manner and means of the work the subcontractor was contracted for; where an incompetent subcontractor is knowingly hired; or where the contracted work constitutes a nuisance per se. 429 N.J. Super. 103, 113 (App. Div. 2012). She also relied upon Accardi v. Enviro-Pak Systems Co., 317 N.J. Super. 457, 463 (App. Div. 1999), where we ruled a general contractor "may assume that the independent [sub]contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety."

The judge found the undisputed record showed that Bayonne Dry Dock "did not exercise control over the means and manner of the work" 5 Seasons was contracted to perform, and 5 Seasons was solely obligated under its sub-contract to provide its workers' safety equipment. The judge thus determined that Saravia died from injuries sustained while performing a task controlled exclusively by 5 Seasons.

Finally, the judge rejected plaintiff's contention that OSHA regulations imposed on Bayonne Dry Dock extended to protect Saravia, finding Bayonne

6

Dry Dock fulfilled its duty by performing atmospheric testing of the anchor chain locker. The judge instead relied on OSHA's determination that 5 Seasons, not Bayonne Dry Dock, had violated applicable laws and regulations in allowing its employees to descend into the anchor chain locker without proper safety measures.

Reconsideration Motion

Judge Allende denied plaintiff's reconsideration motion, setting forth her reasons in an oral decision. She rejected plaintiff's argument that the language barrier between 5 Seasons' supervisor and Saravia made Bayonne Dry Dock as the general contractor liable for Saravia's death. The judge reasoned the language barrier was "immaterial [as] to whether [Bayonne Dry Dock] had a duty to ensure [5] Seasons provided safety measures." She also determined Bayonne Dry Dock did not know or had no reason to know that 5 Seasons' workers such as Saravia would not be able to follow safety directions due to a language barrier thereby creating Bayonne Dry Dock's duty of care to Saravia. Based on 5 Seasons' past uneventful work with Bayonne Dry Dock, the judge maintained there were no facts that Bayonne Dry Dock had reason to deem 5 Seasons a subcontractor with an unsafe work record.

7

The judge also reasoned that because Bayonne Dry Dock was not contracted to ensure 5 Seasons' compliance with OSHA regulations, plaintiff's reliance on Carvalho v. Toll Bros. & Developers, 278 N.J. Super. 451, 460 (App. Div. 1995), aff'd, 143 N.J. 565 (1996), was misplaced. And unlike in Carvalho, Bayonne Dry Dock's "OSHA competent officer was [neither] present at the scene of the accident" nor aware of what 5 Seasons "routinely used for safety."

Lastly, the judge found there was no reason to consider plaintiff's expert's report because there was no legal support for the opinion that Bayonne Dry Dock owed Saravia a duty of care based on its contractual agreements, OHSA regulations, International Covenant for the Safety of Life at Sea, ch. IX, June 30, 1980, 1185 U.N.T.S. 18961, or International Safety Management Code.

Plaintiff appealed.

### III.

In examining the summary judgment under de novo review, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), we apply the same Brill[2] standard that bound the motion court. Townsend v. Pierre, 221 N.J. 36, 59 (2015);

---

[2] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

A-1679-22

W.J.A. v. D.A., 210 N.J. 229, 237 (2012).  Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law."  Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

Summary judgment was correctly granted to Bayonne Dry Dock because, as Judge Allende determined, it did not owe a duty of care to Saravia, an employee of its subcontractor.  See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013) (holding that, to prove a defendant's tort liability, a plaintiff must prove a duty of care, a breach of that duty, actual and proximate causation, and damages).  Whether a party owes a duty to another party is a question of law for the court to decide, not the fact finder.  Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 240 (App. Div. 2022).

In the seminal case of Hopkins v. Fox & Lazo Realtors, our Supreme Court held the existence of a duty of reasonable care depends on "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  132 N.J. 426, 439 (1993).  In Alloway v. Bradlees, Inc., the Court addressed

9

whether a general contractor owed "a duty to assure the safety of an employee of a subcontractor" who uses "equipment supplied by the subcontractor" at the general contractor's work site. 157 N.J. 221, 225 (1999). The Court fine-tuned the Hopkins factors, pronouncing "the foreseeability of harm, the relationship between the parties, and the opportunity and capacity to take corrective action" determine whether imposing "a duty of reasonable care" constitutes "fairness and sound policy." Id. at 233.

Foreseeability examines "whether the defendant was reasonably able to ascertain that [its] allegedly negligent conduct could injure the plaintiff in the manner it ultimately did." Robinson v. Vivirito, 217 N.J. 199, 212 (2014) (citing McDougall v. Lamm, 211 N.J. 203, 225-26 (2012)). Foreseeability also analyzes "whether the defendant had actual or constructive knowledge of the risk of injury and 'is susceptible to objective analysis.'" Rivera, 474 N.J. Super. at 241 (quoting J.S. v. R.T.H., 155 N.J. 330, 338 (1998)). Yet, imposing a duty of reasonable care involves not just foreseeability of harm but also "on an analysis of public policy, that the actor owed the injured party a duty of reasonable care." Carvalho, 143 N.J. at 573 (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984)).

A-1679-22

Applying these principles leads us to conclude, as did Judge Allende, that Bayonne Dry Dock did not owe Saravia a duty of reasonable care in making sure he safety performed his job in entering the anchor chain locker. Plaintiff raises the same arguments the judge appropriately rejected.

Bayonne Dry Dock was under no contractual duty to ensure that 5 Seasons employed the proper safety protocols under federal or state law in performing its sub-contractor work on the USNS Red Cloud. 5 Seasons was solely responsible for its own employees' safety per its sub-contract. Bayonne Dry Dock had no legal duty under federal or state law to ensure 5 Seasons safely performed its job.

It is undisputed that Bayonne Dry Dock was neither supervising Saravia's work nor present when the unfortunate accident occurred such that it had the ability to control Saravia's work. Bayonne Dry Dock was never in a position to exercise due care with respect to Saravia.

There is also no legal or factual basis to conclude Bayonne Dry Dock owed Saravia duty due to a language barrier among 5 Seasons' employees. How 5 Seasons communicated to its employees was not under Bayonne Dry Dock's control.

11

While Saravia's workplace death is tragic, based on the record before us, it would be unfair and unsound public policy to impose a duty of care upon Bayonne Dry Dock to ensure that 5 Seasons' employees, such as Saravia, safely performed their work. It was unequivocally understood that 5 Seasons had the duty to ensure that its employees safely performed their job. Plaintiff has not articulated any public interest in expanding that duty to Bayonne.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1679-22