**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1174-23

ERWIN CAMPOVERDE,

    Plaintiff-Appellant,

v.

NY-NJ LINK DEVELOPER, LLC,
MACQUARIE GROUP LIMITED
I/S/H/A MACQUORIE GROUP
LIMITED, KIEWIT
DEVELOPMENT COMPANY, and
THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY,

    Defendants-Respondents,

and

KS ENGINEERS, PC,

    Defendant.

_____

          Submitted February 6, 2025 – Decided March 4, 2025

          Before Judges Mawla, Natali, and Vinci.

          On appeal from the Superior Court of New Jersey, Law
          Division, Essex County, Docket No. L-6909-18.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, on the brief).

Fabiani, Cohen & Hall, LLP and Margolis Edelstein, attorneys for respondents (Frank D. Thompson II and Colleen Ready, on the brief).

PER CURIAM

Plaintiff Erwin Campoverde appeals from a November 3, 2023 order, which granted defendants NY-NJ Link Developer, LLC, Macquarie Group Limited, Kiewit Development Company, and The Port Authority of New York and New Jersey's motions for summary judgment and dismissed with prejudice plaintiff's complaint related to a workplace incident in which he sustained serious personal injuries while working as a laborer on the Goethals Bridge construction project.[1]  Having considered the record against the applicable legal principles, we affirm.

I.

We begin by reviewing the facts in the motion record, considering them in a light most favorable to plaintiff, the non-moving party.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Plaintiff began working as a construction laborer, and later joined a New Jersey laborer's union.  In 2015,

---

[1]  Plaintiff and defendant KS Engineers, PC voluntarily dismissed their respective claims by way of stipulation.

plaintiff's union referred him to Kiewit-Weeks-Massman (KWM), a joint venture between Kiewit Infrastructure Co. (a subsidiary of Kiewit Development Company), Weeks Marine, Inc., and Massman Construction Co., to work on the Goethals Bridge project (project), which connects Union County with Richmond County, New York, by spanning the Arthur Kill waterway.

The Port Authority of New York and New Jersey (Port Authority) owns the Goethals Bridge. In 2013, the Port Authority entered into an agreement with NY-NJ Link Developer, LLC (NY-NJ Link), to replace the bridge. Macquarie Group, an Australian global services group, owns ninety percent of NY-NJ Link while Kiewit Development Company owns the remaining ten percent. NY-NJ Link hired KWM to design and construct the replacement bridge.

A design-build contract between KWM and NY-NJ Link governed those parties' relationship. The contract required KWM to provide and comply with a health and safety plan, supervise and inspect its own work, and deemed KWM's failure to "formally establish, adhere to or enforce a safety policy, procedure, process, or guideline as required by the [h]ealth and [s]afety [p]lan" a "non-compliance event." The contract also required KWM and NY-NJ Link "each [to] irrevocably and unconditionally submit[] . . . to the exclusive jurisdiction of any New York State court or the U.S. District Court for the Southern District of

3

New York . . . for the settlement of any dispute in connection with th[e c]ontract."[2]

According to the affidavit of Luke Chenery, the Chief Executive Officer of NY-NJ Link, "[o]nly KWM had the authority to hire its workers, train them, assign them tasks to complete, provide them with instructions on completing those tasks and discipline them if necessary." Chenery also attested "NY-NJ Link did not have the authority to control the means and methods of . . . [p]laintiff's work or the work of other KWM employees."

While working on the New Jersey side of the project on October 26, 2017, a KWM foreman assigned plaintiff and a coworker, both KWM employees, to prepare crane mats near a construction trench. At the time of the accident, plaintiff was located outside the trench. An excavator operator, also a KWM employee, swung the crane mat without proper signaling and, plaintiff testified, as he bent down to hand a co-worker a piece of wood, he was struck in the back

---

[2] The Construction and Engineering Contract between NY-NJ Link and KS Engineers, P.C., contains similar language indicating the parties submit to the "exclusive jurisdiction of any New York State court or the U.S. District Court for the Southern District of New York" for disputes in connection with that agreement. And the Subcontract for Design between KWM and Parsons Transportation Group of New York similarly provides their agreement "shall be governed by the laws of the State of New York, excluding their conflicts of law provisions."

by the crane mat attached to the excavator. The incident report included the following description of the accident:

> A 4'x20'x12" crane mat was rigged to the excavator, picked, and set on top of the crane mat to the east. The rigging was not removed from the crane mat as it would need to be put back into the original position. While setting a 12"x12" piece of timber on the east side of a 3' deep by 7' wide trench, the excavator operator swung the 4'x20'x12" crane mat to the west without being signaled to do so. The crane mat came into contact with the laborer at the edge of the trench, hitting him in the small of the back. Two other laborers were in the trench and saw the crane mat move and ducked out of the way. The laborer on top of the trench was knocked across the trench, landed in the bottom of the 3' trench, and struck his hard hat on the Jersey Barrier on the west side of the trench.

According to plaintiff, KWM terminated the excavator operator following the incident.

Plaintiff filed his initial five-count complaint against NY-NJ Link, Macquarie Group, and Kiewit Development Company alleging negligence, liability for statutory tort, and violation of: Occupational Health and Safety Administration (OSHA) standards; Building Officials and Code Administrators (BOCA) standards; and the New Jersey Construction Safety Act. Plaintiff filed his first amended complaint on October 16, 2018, adding the Port Authority as a defendant and a second amended complaint, the operative complaint in this

5

matter, adding KS Engineers, PC, as a defendant and asserting an additional claim for violation of the New York Industrial Code.

Defendants filed a motion for summary judgment. The court granted the motion in a November 3, 2023 order and explained its decision in a comprehensive oral opinion.

The court first rejected plaintiff's arguments seeking the application of New York law and instead determined New Jersey law governed plaintiff's claims. It considered the Second Restatement of Conflict § 145 factors and found the record contained no facts to "establish New York [h]as the most significant relationship to the plaintiff's accident." Instead, the court concluded New Jersey had the more dominant relationship as plaintiff was hired for the job through his New Jersey union, lived in the state, and was injured here. The court also rejected plaintiff's argument that New York law should apply based on the New York choice of law provision in the contract between KWM and NY-NJ Link, as plaintiff's personal injury claims did not arise out of the contract.

Applying New Jersey law, the court concluded defendants did not owe plaintiff a duty of care. The court explained general contractors are not ordinarily liable for injuries sustained by employees of an independent contractor because an independent contractor controls the manner in which their

6

own work is completed. Relying on the principles detailed in <u>Tarabokia v. Structure Tone</u>, 429 N.J. Super. 103 (App. Div. 2012), the court was satisfied that the moving parties did not "provide equipment[,] . . . supervise the construction[,] . . . [or] supervise the work." The court found "Macq[uarie] and Kiewit were simply investors and had no direct connection to the plaintiff's employer KWM." Further, the court noted "NY[-]NJ Link retained KWM to build the . . . [p]roject, but did not retain control over the meetings and methods of KWM's work" and was "satisfied . . . there [could] be no basis . . . to find any of the moving parties potentially exposed to liability for the claims at issue."

The court further held the exceptions to the general rule detailed in <u>Tarabokia</u>, 429 N.J. Super. at 113, specifically: 1) retaining control over a subcontractor; 2) knowingly hiring an incompetent subcontractor; and 3) contracting for work that is inherently dangerous and constitutes negligence per se, were inapplicable in this matter based on the motion record. It noted, defendants were not directly involved in the project as Macquarie Group and Kiewit Development were exclusively investors, the Port Authority merely hired NY-NJ Link, and none of the entities controlled the methods or means of KWM's work. The court further found NY-NJ Link's contract with KWM, which required NY-NJ Link to conduct certain inspections for the limited purpose of

7

ensuring the project's continued progress, did not establish NY-NJ Link maintained control over KWM.

With respect to the second exception, the court relied on Alloway v. Bradlees, Inc., 157 N.J. 221, 236 (1999), and held the OSHA violations plaintiff relied upon as proof that NY-NJ Link and, by extension, the Port Authority, hired an incompetent contractor were insufficient to impose liability because those violations occurred after the parties' entered the contract and further plaintiff failed to establish their admissibility. The court also held the project did not constitute a "nuisance per se[,]" because the work at issue was not "an activity which can be carried on safely only by the exercise of special skill and care and which involves grave risk of danger to persons or property if negligently done."

Additionally, the court addressed each of plaintiff's six claims, and concluded each was without merit. First, the court dismissed plaintiff's OSHA-based claims because it could not find any specific facts pertaining to the alleged OSHA violations and stated, "mere violation of OSHA regulations without more is insufficient to impose liability." The court similarly held plaintiff's claims under the BOCA Code and New Jersey Construction Safety Act were meritless as plaintiff did not indicate which sections of these respective laws defendants

A-1174-23

allegedly violated. The Port Authority's alleged violation of the New York Industrial Code was also without merit as plaintiff did not provide grounds for applying New York law to a New Jersey incident. Finally, the court held plaintiff's claims of a violation of a statutory tort were unsubstantiated.

II.

Before us, plaintiff argues the court erroneously applied New Jersey law instead of New York law because the project "spanned across both New Jersey and New York[,]" and New York's involvement was significantly greater than New Jersey's. In support, plaintiff explains he required work permits from both states, construction occurred in both states, government approvals were required from both states, and the contracts, including the design-build contract between NY-NJ Link and KWM, contained choice of law provisions, which establish New York law controlled.

Further, he contends the project itself "embraced both New Jersey and New York[,]" evidenced by the participation of the Port Authority, a bi-state agency. Plaintiff additionally notes his worker's compensation case related to the injury was filed in New York, and the defense utilized litigation resources in New York, including medical exams, which plaintiff traveled to New York to receive. All of which, plaintiff contends, "point[] to the bi-state nature of the

9

project" and the "intent of the [d]efendants to be bound by the laws of New York."

Plaintiff next argues "[a] worker injured in the course of working on a massive project spanning both . . . [states] should be protected by whichever state's law is more protective of the injured worker." Thus, according to plaintiff, "New York has the more significant interest in this matter given that the legislative intent of both its [l]abor [l]aws and its [i]ndustrial [c]ode was to protect workers and to promote overall safety on construction sites."

We reject plaintiff's arguments. The court properly applied New Jersey law to the claims in plaintiff's amended complaint.[3]

"The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict." McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 583-84 (2017). "A conflict of law arises when the

_____

[3] In light of our decision that the court correctly applied New Jersey law, we deem it unnecessary to address plaintiff's numerous arguments that his claims would have survived summary judgment under New York law, because 1) "New York law imposes strict liability on owners for injuries falling within its ambit, regardless of whether the owner had control of the worksite or contracted for the work", and 2) "[d]efendants violated Industrial Code N.Y. Comp. Codes R. & Regs. tit. 12, § 23-4.2(k), which protects workers who are injured by excavation machines while working at or near a trench" because his "work impermissibly placed him within the path of the excavation machine" and defendants are therefore "liable under N.Y. Lab. Law § 241(6) based upon a violation of Industrial Code Section 23-4.2(k) [and other provisions of the Industrial Code]."

application of one or another state's law may alter the outcome of the case . . . or when the law of one interested state is 'offensive or repugnant' to the public policy of the other." In re Accutane Litig., 235 N.J. 229, 254 (2018) (internal citations omitted) (quoting Continental Ins. Co. v. Honeywell Int'l, Inc., 234 N.J. 23, 46 (2018)); see McCarrell, 227 N.J. at 584.

Here, the issue is whether New Jersey and New York's liability principles with respect to plaintiff's claims are in conflict. For reasons not explained in the record, neither the court nor the parties addressed this threshold choice of law inquiry. Having considered the issue, we are satisfied a conflict exists between New Jersey law and New York law with respect to the liability imposed upon general contractors.

Plaintiff asserts defendants are strictly liable under N.Y. Lab. Law § 241(6) due to various violations of New York Industrial Code. See Jock v. Fien, 605 N.E.2d 365, 367 (N.Y. 1992) (stating contractors and owners are subject to "absolute strict liability" under N.Y. Lab. Law § 241(6)). No one contests that New Jersey law, however, contains no such strict liability principles and has instead established a general rule protecting general contractors from liability for injuries sustained by employees of a subcontractor, except in limited circumstances. See, e.g., Tarabokia, 429 N.J. Super. at 113-14 (explaining

"general contractor[s] enjoy[] broad immunity from liability for injuries to an employee of a subcontractor" subject to certain exceptions).

New Jersey adopted the most-significant-relationship test for deciding choice of substantive law in tort cases. McCarrell, 227 N.J. at 589. Under this test, the "starting point" for a conflict-of-laws analysis is that "the substantive law of the place of injury is presumed to be the governing law." Id. at 590 (citing P.V. ex rel T.V. v. Camp Jaycee, 197 N.J. 132, 141 (2008)). This presumption is not overcome unless the other state "has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts under section 145 and the guiding principles enunciated in section 6 [of the Second Restatement of Conflicts of Laws]." Ibid.

The section 145 factors are as follows: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Id. at 590 n.8 (quoting Restatement (Second) of Conflict L. §145(2)(a) to (d) (Am. L. Inst. 1971)). Section 6's guiding principles for a court's consideration when "determining whether another state has a more significant relationship to the parties and the occurrence," include:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

[Id. at 593 (quoting Restatement (Second) of Conflict of L. § 6(2)).]

These guiding principles maintain the importance of qualitative factors, including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." Erny v. Est. of Merola, 171 N.J. 86, 101 (2002) (quoting Fu v. Fu, 160 N.J. 108, 122 (1999)).

Applying the most significant relationship test and weighing the relevant factors and principles, the court correctly concluded that New Jersey law applies to plaintiff's claims against defendants. It is undisputed the injury occurred in New Jersey. Therefore, to overcome the presumption New Jersey law applies,

plaintiff must establish New York has the more significant relationship to the injury by applying the above-described factors. He has failed to do so.

The first two factors, the place of injury and the place where the injury causing conduct occurred, weigh in favor of a finding that New Jersey law applies because, as noted, it is undisputed the injury occurred in New Jersey, the excavator was operated in New Jersey, and plaintiff fell into a trench located in New Jersey. It is also undisputed plaintiff's domicile is New Jersey. With respect to location where the relationship between the parties is centered, while it is unclear the extent of plaintiff's relationship with any of the named defendants, it is undisputed KWM, which is not a party to this matter, hired plaintiff from his local New Jersey union hall to work on the project. Thus, the employment relationship with defendant began in New Jersey.

The need for New York work permits, the fact that the project consists of construction of both eastbound and westbound lanes, the involvement of bi-state agencies, and choice of law provisions in contracts plaintiff is not party to are simply insufficient to prove New York's relationship overcomes the presumption New Jersey law applies. Plaintiff's claims are not subject to the choice of law provision contained in the Design-Build contract because they do not arise out of the contract. Further, the parties to the Construction and

14

Engineering Contract and the Subcontract for Design, are no longer, or never were, involved in this action. Additionally, the use of New York litigation resources and plaintiff's travel to New York for medical examinations are of little probative value. Lastly, plaintiff's argument that the law of the most worker-protective state should apply is also unpersuasive for the reasons expressed in the motion judge's oral decision.

Comity applies to any choice-of-law analysis and requires the court to examine the public policy "of the forum state and the impact on that policy of enforcing the foreign proceeding." City of Philadelphia v. Austin, 86 N.J. 55, 64 (1981). There are other considerations in determining whether to apply another state's laws, such as "(1) the convenience of the litigants and witnesses, as well as the interests of justice (forum non conveniens); (2) the dissimilarity of remedies in the different jurisdictions; and (3) the existence of conflicts with the local public policy of the forum." Ibid.

We are equally satisfied applying New Jersey law under the aforementioned circumstances does not offend New York public policy. New York's interest is simply not material when compared to New Jersey's, and we are convinced comity principles are not offended by our refusal to impose strict liability principles upon a general contractor who had no involvement in the

15

circumstances leading to plaintiff's injuries with the exception of its role as a general contractor who hired plaintiff's employer.

## III.

Plaintiff next argues "[d]efendants had a duty under New Jersey law not to retain negligent contractors and subcontractors," which they breached because "incompetent workers were operating excavators on the Goethals Bridge without a signalman, and without remembering the excavator was still hooked on to the crane mat." In support, plaintiff contends defendants' arguments and the court's rationale in granting summary judgment ignore: 1) "defendant's prior knowledge of . . . [fifty-one] OSHA violations," 2) "the intertwined corporate relationships of the [d]efendants," 3) "the obvious risks associated with performing excavation work at the height of the Goethals Bridge," and 4) defendants' opportunity to exercise care and train employees to prevent the accident.

Plaintiff further contends the "court's ruling enables such entities to avoid the responsibility of providing safe workplaces simply because they failed to do anything to manage the work being performed on the project they controlled." Relying on Alloway, plaintiff claims his injuries were foreseeable and preventable.

16

Plaintiff also argues Kiewit Development Company's various subsidiaries' OSHA violations are evidence of negligence, can be used as a factor in a negligence assessment under Tarabokia, 429 N.J. Super. at 112, and are "germane to showing that . . . defendants hired an 'incompetent' general contractor in KWM." He also contends whether his "employer, KWM, was an incompetent contractor hired by . . . [d]efendants is at the very least an issue of material fact for a jury to decide." We are unpersuaded by all these arguments.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "[T]he question of whether a duty exists is a matter of law properly decided by the court." Strachan v. John F Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988).

Ordinarily, a general contractor "is not liable for injuries to employees of the subcontractor resulting from either the condition to the premises or the manner in which the work is performed." Wolczak v. Nat'l Elec. Prods. Corp., 66 N.J. Super. 64, 71 (App. Div. 1961); see Muhammad v. N.J. Transit, 176 N.J. 185, 199 (2003). "The premise underlying that approach is that a general contractor 'may assume that the independent contractor and [its] employees are

sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety.'" Tarabokia, 429 N.J. Super. at 113 (quoting Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999)).

Nonetheless, exceptions to the general principle have come to be accepted. Therefore, "a general contractor may be liable for a subcontractor's negligence where [the general contractor] retains control of the manner and means of doing the work contracted for." Ibid. "A general contractor may also be liable where [they] knowingly engage[] an incompetent subcontractor or where the work contracted for constitutes a nuisance per se, namely, is inherently dangerous." Ibid. (citation omitted).

"Although a foreseeable risk is the indispensable cornerstone of any formulation of a duty of care, not all foreseeable risks give rise to duties." Dunphy v. Gregor, 136 N.J. 99, 108 (1994). "Ultimately, [determining] whether a duty exists is a matter of fairness," ibid., and involves a complex analysis that "weigh[s], and balance[s] several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution," Alloway, 157 N.J. at 230 (internal quotation marks omitted) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J.

426, 439 (1993)). "The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Hopkins, 132 N.J. at 439.

Under Alloway, "the violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy." 157 N.J. at 236. However, "OSHA regulations are pertinent in determining the nature and extent of any duty of care." Ibid. "'[P]roof of deviation from a statutory standard of conduct, while not conclusive on the issue of negligence . . . is nevertheless a relevant circumstance to be considered . . . .'" Ibid. (quoting Bortz v. Rammel, 151 N.J. Super. 312, 320 (App. Div. 1977)).

We are satisfied the court did not err in holding defendants did not owe plaintiff a duty of care as none of the three exceptions to the general rule protecting general contractors applied to these facts. The undisputed facts show that none of the defendants retained control over the manner and means of the work. It is undisputed KWM hired plaintiff and the excavator operator, trained the employees, provided protective equipment, and managed the jobsite.

It was also not contested defendants, particularly with respect to Macquarie Group and Kiewit Development, were merely investors who

19

provided funding and board oversight, and the Port Authority was similarly disconnected from the project except for hiring NY-NJ Link. Further, as the court correctly noted, the contract between NY-NJ Link and KWM required NY-NJ Link to conduct certain inspections to ensure compliance with the contract and applicable law, not control the manner and means of the work. As stated in the depositions of Chenery and Nasseruddin Syed, a Port Authority Senior Program Manager, their intermittent presence at the project was to observe progress, not control any aspect of construction.

The court also correctly held the second exception concerning hiring incompetent contractors was inapplicable in this case. To hold a principal liable for hiring an incompetent contractor, the plaintiff must show the "contractor was, in fact, incompetent or unskilled to perform the job for which [they were] hired, that the harm that resulted arose out of that incompetence, and that the principal knew or should have known of the incompetence." Puckrein v. ATI Transp., Inc., 186 N.J. 563, 576 (2006). No such facts exist in the motion record.

Instead, plaintiff places an inordinate amount of weight on Kiewit's previous OSHA violations as evidence of incompetence even though none of the violations pertained to the project. Additionally, of the fifty-one violations, only five were issued to Kiewit Infrastructure, a member of the KWM joint venture,

20

and occurred after the execution of the Design-Build contract, thus undercutting plaintiff's argument that NY-NJ Link hired an incompetent contractor. The remaining violations presented in the record pertained to unrelated entities and occurred on projects across the country.

With respect to the third exception, the court correctly held this activity was not a nuisance per se. Nothing in the record supported the conclusion or created a genuine and material factual question the construction work was uncommon, involved a high risk of harm, or required any special precaution. Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 435-36 (1959).

Finally, even under the relaxed requirements of Alloway, plaintiff did not allege facts sufficient to create a genuine dispute of material fact as to whether defendants owed him a duty. As discussed above, the only connection between defendants and plaintiff is NY-NJ Links's execution of a contract with plaintiff's employer. There was little opportunity for defendants to intervene or exercise care as they were not routinely present on the site, did not control KWM or its employees, and were not aware of any dangerous conditions on the site. The accident happened quickly, unexpectedly, and was the result of a routine work event, albeit a dangerous one.

21

To the extent we have not addressed any remaining arguments, it is because we have determined those arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division